## SILAS R. AUSTIN ET AL.
### v.
## FIRST NATIONAL BANK OF MORRISON.

*Fraudulent Conveyance—Creditor's Bill—Insolvency.*

1. One indebted and insolvent has no right to make a voluntary conveyance to a third party, without consideration, as against the claim of existing creditors. If such a conveyance is made as to such creditors, the law conclusively presumes it to have been done with fraudulent intent, no matter how free from such fraudulent intent the parties may in fact have been.

2. If a conveyance of real estate or other property be made with actual fraudulent intent on the part of the grantor. and the grantee have knowledge of such intent, and participate in it, such conveyance will be deemed fraudulent as to existing creditors.

Austin v. First Nat. Bk.

3. The condition of a debtor making a voluntary conveyance, as to solvency, is what the law regards, and not his belief.

4. In the case presented this court holds, in view of the evidence, that the conveyance by a party named to his son of certain real estate was fraudulent in a legal point of view, and that the decree subjecting the same to sale under certain executions was in the main correct.

5. It is not necessary that execution should have issued on given judgments and been returned *nulla bona*, the same being liens on the equitable interest of the grantor, the object of the bill being to remove a conveyance as fraudulent. In such case equity has juristiction.

6. The court modifies the decree in the case presented in so far as to allow the application by complainant bank of funds in its hands to the extent of one-half thereof on a certain judgment, the other half to be recovered from the defendant found herein to have conveyed his property in fraud of certain creditors.

[Opinion filed May 25, 1893.]

IN ERROR to the Circuit Court of Whiteside County; the Hon. JAMES SHAW, Judge, presiding.

On the 30th day of March, 1891, William S. Austin and Silas R. Austin were indebted to the First National Bank of Morrison.

That indebtedness was evidenced by what are commonly called judgment notes. There are two of these notes. One was for $1,000, and the other was for $1,500; this last one was signed by A. E. Austin also.

The bank corporation also held a note that was a judgment note, that had been executed by William S. Austin, Silas R. Austin and Dennis Austin, to one Samuel Curry for $1,200; that note had been assigned by Mr. Curry to the the bank. Silas R. Austin was only security on all the notes for William S. Austin, his brother. On that same 30th day of March, 1891, Silas R. Austin, one of the plaintiff's in error, was the owner in fee of the lands and premises involved in this controversy.

Those lands and premises on that day were incumbered by mortgages executed by himself and wife aggregating about $4,500.

The lands in controversy were worth on the day above

referred to at least $9,000; on that same day Silas R. Austin, his wife joining him in the conveyance, executed a warranty deed to Marion L. Austin, the son of the grantors, conveying to him the lands and premises involved in this controversy for a pretended consideration mentioned in the deed of $100, subject to the incumbrances then on the land.

Silas R. Austin and his wife were living at that time in the village of Lyndon, in Whiteside County, in a property, a house and lot, that he then owned and at the same time he executed a conveyance to Lettie L. Miller, conveying that homestead property to her, she being the married daughter of the grantors, living separate and apart from them. The conveyances of the different properties by Silas R. Austin, as above stated, left him in an absolutely insolvent condition. The homestead lot, it is conceded, can not be reached in this proceeding.

Marion L. Austin is a young man living separate and apart from his parents; is a married man engaged in farming, and of limited means. William S. Austin, one of the co-makers of the several notes above referred to, was a stock dealer residing at Morrison, in Whiteside County, a brother of Silas R. Austin; he failed in business suddenly, and on the 30th day of March, 1891, made an assignment to John F. Hecker under the State law. William S. Austin's bankrupt estate had not assets sufficient to liquidate his indebtedness, and in fact but a small portion of it, not to exceed sixty cents on the dollar.

Marion L. Austin, when he took the deed from his father and mother for the lands in controversy, on the 30th day of March, 1891, did not pay the pretended $100 mentioned in the deed as the consideration for the same; if he ever did, it was after the bill was filed attacking the deed for fraud.

The deed from Silas R. Austin and his wife to Marion L. Austin was filed for record with the recorder of deeds of Whiteside county on the 30th day of March, 1891, at 4:25 o'clock P. M., and recorded in book 138 of records, on page 202. On the 31st day of March, 1891, a judgment was

entered by confession in favor of the First National Bank of Morrison, the complainant in the original bill filed herein, on one of the notes above referred to, executed by William S. Austin and Silas R. Austin; that judgment was for $999.11 and costs of suit; and on the same day execution was issued on that judgment and levied on the property in controversy as the property of Silas R. Austin.

There was also rendered in said Circuit Court on said 31st day of March, 1891, a judgment in favor of the bank v. William S. Austin, Augustus E. Austin and Silas R. Austin, for $1,506.07 and costs of suit on another one of the notes above referred to; upon which execution issued at that time, was placed in the hands of the sheriff of the county and levied upon the lands in controversy.

, On the 1st day of April, 1891, there was a judgment rendered in favor of the bank and against William S. Austin, Silas R. Austin and Dennis Austin, in the Circuit Court, upon the note bank received from Curry, against the defendants for $1,294.13 and costs, which was by confession; upon which execution was duly issued on that day, placed in the hands of the sheriff and levied upon the lands in controversy in this case, as the property of Silas R. Austin.

A bill was then filed in the Circuit Court, on the chancery side thereof, which is in the nature of a creditor's bill, attacking the deed executed by Silas R. Austin and wife to Marion L. Austin, on the ground of fraud and asking the court that by its decree the cloud created by that deed might be removed out of the way of the several executions aforesaid, and that the premises might be sold under the executions untrammeled by that deed.

Fraud was also charged in the bill in the conveyance by Silas R. Austin and his wife to Lettie L. Miller of the homestead property in Lyndon, but not sustained. Answers were filed denying the allegations of fraud; claimed the deed was executed for valuable consideration, and that as to one of the judgments, inasmuch as the bank corporation after this bill was filed, as was alleged, released certain lands of one Dennis Austin from the lien of such judgment, it

therefore paid the same. A release of lands was made, and certain moneys were deposited with the bank as collateral on the part of Dennis Austin to the judgment set up in the bill against him and Silas R. and William S. Austin; and it is claimed that such deposit was a payment. The evidence shows that enough of the money arising from a loan procured by Dennis Austin on the security of his lands released to satisfy the judgment in full on which Dennis and Silas R. Austin were joint and several securities for William S. Austin, their brother, but appellee claims only placed there as security for the satisfaction of the judgment.

Upon replication being filed the cause was referred to H. C. Ward, special master, who, upon a hearing of all the evidence, reported the same and his findings to the Circuit Court, sustaining the allegations of the bill as to fraud, and finding the defendant in error entitled to the relief prayed for except as to the judgment rendered upon the note given to Curry, and endorsed to the defendant in error, signed by William S. Austin, Silas R. Austin and Dennis Austin, jointly, and as to that he found by the joint act of defendant in error and Dennis Austin, it was released, and that the decree should so find. All the exceptions of appellant as to the findings of the special master in his favor were overruled, and the defendant in error's exception to his finding as to the judgment last above named was sustained.

The court, upon final hearing, granted the relief prayed for in the bill and signed a decree accordingly, from which decree this writ of error is prosecuted and reversal sought.

Mr. F. E. ANDREWS for plaintiff in error.

If a case of actual fraud be alleged, relief can not be had by proving a case of constructive fraud. Perry v. Jewell, 1 K. and J. 671; Eyer v. Potter, 15 How. 42; Gerde v. Hawkins, 2 Der. Eq. (N. Car.), 393; Paper v. Hoard, 107 N. Y. 67; Kennedy v. Bruner, 29 Ill. App. 443.

The answer of the defendants asserts with the utmost positiveness the good faith of the several transactions. That the conveyances were *bona fide* sales for valuable con-

Austin v. First Nat. Bk.

siderations and with no intention to hinder and delay creditors, etc., \* \* \* the burden of proving the conveyances fraudulent and done with intent to hinder and delay creditors rests upon the complainant. Sawyer v. Moyer, 109 Ill. 465. Fraud can not be assumed; it must be proved. Hatch v. Jordon, 74 Ill. 417; Phelps v. Curts, 80 Ill. 112; Lawson v. Funk, 108 Ill. 502.

Fraud can not be established by circumstances that merely raise a suspicion. Byrant v. Simoneau et al., 51 Ill. 327; Reed v. Noxon, 48 Ill. 325; Bullock v. Narrot, 49 Ill. 65.

The fact that the sale was made to a near relative, that is, between father and son, is not a badge of fraud. Nelson v. Smith, 28 Ill. 501; Eads v. Thompson, 109 Ill. 91 and 92; Tyberandt v. Raucke, 96 Ill. 71; Wait on Fraudulent Conveyances, Sec. 242.

Indeed, in the absence of fraud, the court will not say that a man may not sell to a near relation on better terms than he would have to give to a stranger. May on Fraudulent Conveyances, second edition, by Worthington, p. 57.

An honest instrument executed, for which the consideration is partly meritorious and partly valuable, and the instrument is one between relations, the court can not say that the difference between the real value and the consideration is a badge of fraud, and if not a badge of fraud or evidence of an intention to defraud creditors, it has no relation to the case. May on Fraudulent Con., 2d Ed., p. 57; *In re* J. Johnson, 20 Ch. D., Per Try. J. 391-7; Nelson v. Smith, 28 Ill. 501; Roe v. Milton, 2 Wils. 358; Wait on Fraudulent Conveyances, Section 208; May on Fraudulant Conveyances, p. 251-2; Eads v. Thompson, 109 Ill. 145.

" It was said by the court in Boltom v. Midden, L. R. Q. R. 57, that the adequacy of the consideration is for the parties to consider at the time of making the agreement, not for the court when it is sought to be enforced." May on Fraudulent Conveyances, p. 25–33.

" In the absence of evidence to the contrary, honesty and

fair dealing is always presumed, and if any person claims that there is a fraud in any transaction it devolves upon him to prove the fraud." Long v. West., 31 Kas. 298; Sawyer v. Myers, 109 Ill. 461; Hoosur v. Hunt, 65 Wis. 71.

"The fraud can not be assumed, it must be proved." Hatch v. Jordon, 74 Ill. 417; Phelps v. Curts, 80 Ill. 112; Lawson v. Funk, 108 Ill. 502

It is not enough to prove fraud against the grantee. Both parties must be proved to have participated in the fraud. Hatch v. Jordon, 74 Ill. 417; Ewing v. Runkle, 20 Ill. 448-85; Myers v. Kinzie, 26 Ill. 36-38.

The demurrer should have been sustained to the bill (1st) for the reason that the executions nor no one or more of them was returned unsatisfied in whole or in part. Durand & Co. v. Gray et al., 129 Ill. 9; Moshier v. Meak, 80 Ill. 79; Dormueil v. Ward, 108 Ill. 219.

See further authorities cited under Sec. 49, Chap. 22, R. S., Star & Curtis.

The extension of the time of payment of a note releases the security. Rogers v. Trustees of Schools, 46 Ill. 431; 31 Ill. 269; 24 Ill. 610.

The payment of interest in advance is a good consideration for extending the payment of a note. Maher v. Lanfrom, 86 Ill. 518; 31 Ill. 269, 258; 27 Ill. 323.

The bank knew that Silas R. Austin was security. See testimony of William S. Austin, as to extension of time. Such defense may be set up by grantee. Maher v. Lanfrom et al., 86 Ill. 518, and cases cited on page 521; Pike v. Crist, 62 Ill. 461; Safford v. Vail, 22 Ill. 327.

Mr. O. F. WOODRUFF, for defendant in error.

A party may file his bill to remove a fraudulent conveyance without showing that he could not obtain satisfaction out of other property of the defendant, and without having execution returned *nulla bona*. Dunham v. Cox, 10 N. J. Equity, 437; Miller v. Davidson, 3 Gilm. 518-522; Weightman v. Hatch, 17 Ill. 287; Newman v. Willetts, 52 Ill. 98-102.

Where the grantee, in a deed made to defraud the cred-
itors of the grantor, knows of the fraudulent intent of the
grantor, or has knowledge of facts sufficient to excite the
suspicion of a prudent man and put him upon inquiry, he
makes himself a party to the fraud. Actual knowledge by
the vendee is not essential. Bartles v. Gibson, 17 Fed. Rep.
293–297; Atwood v. Impson, 20 N. J. Equity, 156; Baker
v. Bliss, 30 N. Y. 70; Avery v. Johnson, 27 Wis. 251; Hop-
kins v. Langdon, 30 Wis. 381; U. S. v. Houghton, 14 Fed.
Rep, 545; Gollober v. Martin, 6 Pacific Rep. 267; Bump on
Fraudulent Conveyances, 200.

The law presumes that every man intends the necessary
consequences of his acts, and where the conduct of the
debtor necessarily results in defrauding his creditors, he is
presumed to have foreseen and intended such results. Gol-
lober v. Martin, 6 Pac. Rep. 267–269; Nichols v. Nichols,
18 At. Rep. 153–154.

If a part of the consideration for a transfer is merely a
nominal or colorable consideration contrived to hinder,
delay or defraud creditors, the whole transfer is void.
Bump on Fraudulent Conveyances, 476; Marriott v. Givens,
8 Ala. 694; Tatum v. Hunter, 14 Ala. 557; McKenty v.
Gladwin, 10 Cal. 227; Scales v. Scott, 13 Cal. 76; Mead v.
Combs, 19 N. J. Equity, 112; Wedgworth et ux. v. Wedg-
worth, 4 So. Rep. 149; Wedgworth v. Withers, 53 N. W.
Rep. 576.

If a purchaser knows, when he takes a deed, that the
object of the grantor is to defraud creditors, the deed is
void, though he may give a full consideration therefor.
The Farmers' Bank v. Douglas, 11 S. & M. 545; Edgell v.
Lowell, 4 Vermont, 505; Green v. Tantum, 19 N. J. Equity,
105–110; Schmidt v. Opie, 33 N. J. Equity, 138–141; Holt
v. Creamer, 34 N. J. Equity, 181–189; Davis v. Birchard,
53 Wis. 492.

The conveyance of property, as against an existing cred-
itor of the grantor, can not be supported unless shown to
have been founded on an adequate as well as valuable con-
sideration; and when a controversy arises between the

grantee and an existing creditor as to the validity of the conveyance, the onus of proof that it was founded on an adequate and valuable consideration is cast on the grantee; and the recital of a consideration in the conveyance *is not* evidence against the creditor. Fisher v. Moog, 39 Fed. Rep. 665; Hubbard v. Allen, 59 Ala. 283; Bump on Fraudulent Conveyances (2d edition) 269; Wedgworth v. Wedgworth, 4 So. Rep. 149; Bump on Fraudulent Conveyances, 43; Sands v. Hildreth, 2 Johnson's Chancery, 35; Gardner Bank v. Wheaton, 8 Me. 373; Bowles v. Shoenberger, 2 B. & Mon. 373; Doughton v. Gray, 10 N. J. Equity, 323; Haney v. Nugent, 13 Wis. 283; Steere v. Hoagland, 39 Ill. 264; Monell v. Sherrick, 54 Ill. 269; Merry v. Bostwick, 13 Ill. 398; Bay v. Cook, 31 Ill. 336; Gordon v. Reynolds, 114 Ill. 118.

It is not necessary that insolvency should always be proved or presumed in order to render a conveyance void. If the indebtedness is so large that the effect of the transfer is to defraud creditors, the conveyance is void. Parkman v. Welch. 36 Mass. 231; Swartz v. Hazelett, 8 Cal. 118; Potter v. McDowell, 31 Mo. 62; Blake v. Sawin, 92 Mass. 340.

A conveyance is voluntary when the consideration is merely nominal and it prevents the grantor from acting fairly toward his creditors and disables him from paying his debts, and results in hindering or delaying his creditors; notwithstanding he may make the conveyance with the most upright intentions. Guffin v. The First National Bank of Morrison, 74 Ill. 259; Harmon v. Harwood, 26 App. 341; Bump on Fraudulent Conveyances (2d edition) 266, 267–288; Priest v. Conklin, 38 Ill. App. 180.

The intention with which the conveyance is said to be made is oftentimes of question of law. Every man is held to know the law and the facts regarding his own affairs.

The law also presumes that every man intends the necessary consequence of his act, and if the act necessarily delays, hinders or defrauds his creditors, then the law presumes that it is done with a fraudulent intent. Fiedler v.

Darrin, 50 N. Y. 437; Bump on Fraudulent Conveyances, 266, 267; Swartz v. Hazlett, 8 Cal. 118; Potter v. McDowell, 31 Mo. 62; Robinson v. Stewart, 10 N. Y. 190; Carpenter v. Roe, 10 N. Y. 227; Reade v. Livingston, 3 Johnson's Chancery Rep. 481; Cowling v. Estes, 15 Ill. App. 255–261.

If a grantor is unable, after such conveyance, to meet his debts in the ordinary course prescribed by law for their collection, or is reduced to that situation where an execution against him would be unavailing, the conveyance is void. Bump on Fraudulent Conveyances, 281, 282, 283; Potter v. McDowell, 31 Mo. 62; Mohawk Bank v. Atwater, 2 Paige, 54; Van Wyck v. Seward, 6 Paige, 62; Church v. Chapin, 35 Vermont, 222.

Marion L. Austin having taken the deed from his father with no consideration, or, if any, with such inadequate consideration that the law would term him as a volunteer. Tunison v. Chamblin et al., 88 Ill. 378–385; Gordon v. Reynolds, 114 Ill. 118.

The omission of the grantee or grantor, or any other important witness, to testify as to the facts and circumstances concerning the execution of the conveyances attacked on the ground of fraud, is looked upon by the courts with suspicion; and unexplained, is always a ground for unfavorable presumption. Bump on Fraudulent Conveyances, 52, 53, 54; Glenn v. Glenn, 17 Iowa, 498; Henderson v. Henderson, 55 Mo. 534; Peebles v. Horton, 64 N. C. 374; Hunt v. Blodgett, 17 Ill. 583; Smith v. Tosini, 48 N. W. Rep. 299–301; Probert v. McDonald, 51 N. W. Rep. 212–214; Bartles v. Gibson, 17 Fed. Rep. 293–297.

A creditor can not lawfully pay himself with the debtor's money, without the debtor's consent, and that what parties do can not be judged a payment or extinguishment if it was not so intended at the time. Detroit, Hillsdale & S. & W. R. R. Co. v. Smith, 50 Mich. 112; Moore v. Tate, 22 Gratt. (Va.), 351; Flower v. Elwood, 66 Ill. 438; Kipp et al. v. McChesney, 66 Ill. 460.

MR. JUSTICE LACEY. The question presented in this rec-

ord is, perhaps, more a question of fact than of law. The law is well settled that, one being indebted and insolvent, has no right to make a voluntary conveyance to a third party without consideration as against the claim of existing creditors. If such a conveyance is made as to such creditors, the law conclusively presumes it to have been done with fraudulent intent, no difference how free from such fraudulent intent the parties may in fact have been. We do not understand this principle to be controverted by counsel for appellant. Then, again, if a conveyance of real estate or other property be made with actual fraudulent intent on the part of the grantor, and the grantee have knowledge of such intent and participate in it, such conveyance will be deemed fraudulent as to existing creditors. There are two contentions in this case on the part of defendant in error by which the conveyance of Silas R. Austin to his son, Marion L. Austin, is sought to be vacated and set aside. The one is that the conveyance was made without any consideration, was voluntary and a mere gift, and for that reason, in the insolvent condition of the grantor, void in law as against the complaining judgment creditors of Silas R. Austin, whose debts existed at the time of the conveyance. The other is that, although there may have been a small consideration, though entirely inadequate, the conveyance was made with the actual intention, participated in by both father and son, to defraud, by means of the conveyance, the creditors of Silas R. Austin, and, therefore, as to such creditors void, notwithstanding there was a valuable consideration. This would be controlled by Sec. 4, Chap. 59, R. S., entitled "Frauds and Perjuries," which renders all such conveyances void against the creditors, purchasers or others so intended to be disturbed, delayed, hindered or defrauded.

In the latter case the insolvency of the grantor is probably not a necessary element, although it might weigh heavily as a matter of evidence in establishing the actual fraudulent intent. The appellant insists that Silas R. Austin was not at the time of the conveyance insolvent or in failing circumstances, and that he had remaining, after conveying

his real estate to his son, sufficient property, subject to execution, to pay all his debts. We do not think the evidence sufficiently sustains this contention. Aside from a note of $3,600, given to him by William S. Austin, he had no property whatever except, perhaps, a $500 unsecured note on William S. Austin. The $3,600 note was secured by a mortgage on 640 acres of land in Kansas, already mortgaged for $4,500. The only consideration of the $3,600 note was to secure the $500 note held by Silas or William S. Austin, and to indemnify Silas against his securityship on the notes upon which the three judgments in question in this suit was rendered, and another $500 note on which he was security to another party. After conveying away his revisionary interest in the 220 acres of land in question, he had nothing but the above mentioned $3,600 note on his brother, William S. Austin. It will be seen that the note, situated as it was, was very precarious security. William S. Austin was, in fact, insolvent, and made an assignment the same day of this conveyance, and was contemplating it before the conveyance, although he swears he had made it known to no one. His estate, as testified to by Hecker, his assignee, will not pay sixty cents on the dollar. The Kansas land was largely encumbered and nothing could be made out of it without advancing $4,500 to pay the prior mortgage, and then it was doubtful what the land would be worth.

We feel well satisfied from the evidence that Silas R. Austin was not in a condition financially, in justice to his creditors, to give away so considerable a part of his estate as he did by the conveyance to his son, no matter what his opinion might have been as to his financial ability. He made this conveyance, believing, as he swears, that William S. Austin was solvent and would pay all his debts on which he, Silas R., was security. But the fact was, and it developed on the same day of the conveyance, that William S. was insolvent to the extent mentioned above, which placed Silas R. in the same or a worse condition. It mattered not what, in law, Silas R. thought about his condition of solvency at the time of his conveyance, if in fact, he was insolv-

ent. The law would forbid his conveying away, without consideration, his property thus, in fact depriving his creditors of the means of making their claims out of his property. The condition of a debtor making a voluntary conveyance as to solvency, is what the law regards, and not his belief. The most vital question in this case, perhaps, after determining the condition of Silas R. as to solvency, is as to whether or not the conveyance was made to his son for a valuable consideration or whether it was a mere gift. We have examined the record carefully on this point and have come to the conclusion from the evidence therein and all the circumstances surrounding the transaction, that the conveyance was a gift of the interest of Silas R. Austin in the land, about three thousand to four thousand dollars being its value in excess of mortgages on it. The master finds from the evidence that the land at the time of the conveyance was worth $35 per acre, amounting to $7,700. Silas R. Austin himself swears that it was worth that amount, but the great weight and preponderance of evidence is that it was worth $40 per acre. The land was incumbered by two mortgages, aggregating about $4,500. The contention of Marion L. Austin, one of the appellants, is, that he purchased the land of his father for $100, and an agreement with him to pay off the mortgages then on the land, making about $4,600, possibly a little over. The deed on its face shows that the consideration was $100, subject to the incumbrances on the land. Marion L. Austin testifies that he paid to his father the $100 mentioned in the deed; but his evidence on cross-examination is very unsatisfactory about the circumstances of the payment, how and where he got the money to pay the $100, and the time he paid it and the various circumstances connected with it. He states at first that he got twenty-seven dollars of the money from the sale of cattle and the balance by the sale of other stock, cattle and hogs, and then afterwards that he borrowed fifty or sixty dollars of the money; and when his attention was called to this on cross-examination, he states that he forgot about borrowing the money at the time.

Marion L. paid the interest on one of the mortgages existing at the time of the conveyance to him, in the next fall afterward, $150, and he got this money from his father; and then it developed in his testimony that his father had owed him substantially this amount prior to the execution of the deed to him. Why he did not turn the $100 he claims to have given for the land against this indebtedness to him of $150, he fails to state. It appears also that the $100 was not paid at the time the deed was made, and perhaps for a couple of months afterward, the month in which it was paid or circumstances not remembered, and it was not paid until after this suit was commenced. It appears also that Silas R. Austin knew that the land was worth thirty-five dollars per acre, and if he had been intending to make a sale of the land at all he would have sold it for something near its value. And if he was not intending to sell the land for its value it would have been natural for him to have said something about it to his son, whether he was giving him three thousand to four thousand dollars or not, but nothing of the kind appears in the evidence. In addition to this, there is the testimony of Jackson, the cashier of the bank, the defendant in error, who swears that he had a conversation with Marion L. Austin a short time after the assignment in which Marion L. admitted to him that the deed was executed from his father to him without any consideration, and that he took the title to the land for the purpose of helping his father to save something; that William S. Austin and his partner were "going to sticks." Marion L. denies this conversation, it is true, but the circumstances make the statements made by Jackson appear probable and reasonable. Jackson is a disinterested witness, so far as appears from the evidence, and Austin a deeply interested one. Another important circumstance in the case is that while Silas R. Austin was on the witness stand, called by his and Marion L.'s attorneys, and questioned in regard to the good faith of the transaction—whether the deed was made with intention to defraud his creditors—he was not interrogated on the very vital and important question at issue,

whether he was paid or agreed to be paid any consideration for his interest in the land by his son, or whether the $100 was paid or agreed to be paid to him. Under the circumstances, Marion L. Austin's evidence having been so directly contradicted by his own admissions, as sworn to by Jackson, it would seem that such evidence would have been on the part of Silas R., if he could have corroborated his son as to the payment, of the highest importance.

The fair inference would be that he could not corroborate his son on the question of the payment of the $100, or his undertaking to pay off the prior mortgages.

Another fact appearing in the case was the absence of any agreement in the deed, or provision, that Marion should pay those mortgages. He simply took the warranty deed, subject to the mortgages, which would leave him an option whether he would ever pay them or not; and it is more than probable that the deed expressed the real intention in that regard. No attempt was ever made, at the time of the transaction or since, to take up those notes and substitute his own. All the circumstances considered, we think it clearly appears from the evidence if the deed was not made with actual fraudulent intent, that it was a mere gift from the father to the son of his interest in the land without exacting any terms of purchase. If that be so, legal fraud on the part of Silas R. and Marion L. Austin would be established, no matter what their actual intentions were. There are many circumstances connected with the case that would indicate that Silas R. Austin had a strong suspicion, founded on facts some way coming to his mind, that William S. Austin was about to fail, and that he thought it best, in order to save something, to deed the land to his son, and that this fact was communicated to the son.

The evidence discloses that William S. had made this $3,600 note as a sort "of a pacifier," as Silas R. swears, and the mortgage on the Kansas land, and delivered them to him on the 27th day of March, 1891, three days before the deed to his son; that the deed had been talked of and under consideration for some days before it was executed; that

Silas R. was not in good health; that the deed, after being executed in the forenoon, was taken to the county seat, eight miles distant, and filed for record at 4:25 p. m.   Of course all this might have happened and the intentions been honest.   Silas R., however, swears that he had faith in the solvency of Wiliam S., and that the deed was not made with any actual fraudulent intent. and his evidence appears to be frank and open and nothing about it that justifies us in disregarding it.   Taking this view of the evidence and the law, we regard the conveyance as fraudulent in a legal point of view and that the court below did not err in sustaining the master's report in such finding and in rendering the decree subjecting the land to sale under the executions issued on defendant in error's judgments except as we will hereafter decide.

We will notice now some legal points raised.   It is not required, as thought by counsel for plaintiffs in error, that execution should have issued on the judgments in question and been returned *nulla bona*.   The judgments in these cases were liens on the equitable interest of Silas R. Austin, and the object of this bill was to remove the conveyance to his son, as fraudulent.   In such case equity has jurisdiction. Miller v. Davidson, 3 Gilm. 522; Weightman v. Hatch, 17 Ill. 287; Newman v. Willetts, 52 Ill. 102.

The question of the extension of the time of the notes being a release of the judgments is not of importance here. If any such defense had any support in the evidence it is of no consequence for the reason that full consent was given in the notes and powers of attorney to confess judgments, to the extension of time of the payment of the notes without the consent of either party, and that it should not operate as a release to either party.   We think the release of the judgment against Dennis Austin, executed by defendant in error as to Dennis' land, was sufficiently identified by the evidence as being the same judgment in this suit.   Furthermore, we regard the release as immaterial, as the money received from Dennis was put in the hands of appellee on the judgment sought to be collected in this suit against

Dennis and Silas R. Austin, and it would not matter whether there were any formal release of Dennis' land by defendant in error. This point made by counsel for defendant in error is therefore overruled.

There is one more important question in principle that we will now notice, though it may, or may not be of benefit to the plaintiffs in error in the final outcome of the case. It is the following: The plaintiffs in error object to the sustaining the exception of defendant in error to the master's report finding the judgment to which Dennis Austin was a party defendant paid and satisfied. It appears that his judgment, interest and costs amounted to $1,348.43; that Silas R. Austin and Dennis Austin were co-securities on the note on which the judgment was obtained, for the principal, W. S. Austin. The judgment of defendant in error became a lien on the lands of Dennis Austin, and Dennis Austin being indebted to the defendant in error on another judgment of about $1,600, and to a considerable amount to other parties, was permitted by defendant in error to raise a sum of money on this land by mortgage to pay off these debts and satisfy the liens. When the money was raised, it was placed in defendant in error's hands and the judgments released.

It appears by the evidence of Jackson, the cashier, and Dennis Austin that a sum of money equal to the judgment in question was placed in Jackson's hands, as agent of the bank, to be held as they say as security for the payment of this judgment, sought now to be collected, then already overdue, out of the property of Silas R. and Marion L. Austin. The intention of the parties is plain enough to be seen; it was to keep the judgment in question unsatisfied, so that it could be collected by means of this suit and execution issued on the judgment from Silas R. Austin's estate, and if that should be accomplished the money so placed in the cashier's hands by Dennis Austin would be handed back to him; if they should fail in its collection then the judgment was paid; the bank would have the power to apply it at any time. This suit was then pending, and afterward, in reality,

Austin v. First Nat. Bk.

as far as this judgment is concerned, was and is prosecuted for the benefit of Dennis Austin. The defendant in error is an indifferent party, disinterested.

As between Silas R. and Dennis Austin, each is equally bound to pay one-half of this judgment and costs. This rule is established on equitable principles. It would be highly inequitable to allow the bank to collect this entire amount of Silas R. Austin for the benefit of Dennis Austin, but it would be equitable that Silas R. should pay one-half of it. Therefore we hold that the bank has been paid, or should apply, one-half of this money to the payment of the judgment, interest, and costs in question. This is no hardship on the defendant in error, because when they fail to collect this one-half, all they have to do is to apply the money put in its hands by Dennis Austin to the payment of the other half. It is not like a case where one holds for security personal property requiring foreclosure before the debt can be realized. The only foreclosure in this case required is to use the money, the authority for which it already has. The debt is in fact paid to that extent and in equity should be so regarded. The court was therefore partly right and partly in error in sustaining the exceptions to that portion of the master's findings. The court should have overruled the exception as to one-half. It appears from the evidence that the claim of the defendant in error of all the judgments in question have been proved up against the estate of William S. Austin in the hands of the assignee. After the payment of this judgment in question, when the claim for it is collected of the assignee, or any proportion of it, then after the full payment of this claim by the securities in equal proportion they will each be entitled to be subrogated to the rights of the bank and each receive one-half of whatever is paid on such claim. The same would be the case as to any other collateral, if any, held by Silas R. Austin for the benefit of the securities of this note; for security held by one is for the benefit of all other securities.

The decree ought, therefore, to be modified so as only to allow the sheriff to collect one-half of the judgment above

named out of the real estate deeded to Marion L. Austin. It appears also that Marion L. Austin has paid $150 interest on the mortgage to the Morrison Literary and Scientific Association.   This payment was made under claim of ownership of the land and paid under circumstances where the original deed from his father was not made with any actual fraudulent intent, only legal fraud; and if he had not paid, the defendant in error would have been compelled to pay it to prevent a foreclosure, and therefore we deem it no more than equitable that Marion L. Austin should be subrogated to the rights of the Morrison Literary and Scientific Association, and that he be reimbursed out of the first moneys realized from the sale of the equity of redemption in the land; also, the same as to any taxes he may have paid on the land since acquiring a deed.   We, therefore, affirm the decree of the court below in all respects except as above indicated, and that the cause be remanded, with directions to the court below to so modify the decree as to only allow the collection of one-half of the judgment interest and costs of the judgment to which Dennis Austin is a party, and to require the payment of $150 to Marion L. Austin out of the first moneys received on the sale of the lands and also the amount of any taxes he may have paid on said lands after the date of his deed, March 30, 1890, and that defendant in error pay the costs of this case made in this court.

*Decree affirmed in part and reversed in part.*