**UNITED STATES of America,
Plaintiff,** ..

v.

**Sam MITCHELL, Vera L. Mitchell, Sam Dale Mitchell, the Chicago Title and Trust Company, Theodore S. Isaacs, Director of the Department of Revenue, of the State of Illinois, and Cook County, Defendants.**

No. 62 C 1823.

United States District Court
N. D. Illinois, E. D.

May 8, 1967.

Edward V. Hanrahan, U. S. Atty., for plaintiff.

Wm. G. Clark, Chicago, Ill., for Director of Internal Revenue.

Daniel S. Wentworth and James C. Wickline, Chicago, Ill., for Chicago Title & Trust Co.

Anna R. Lavin, Chicago, Ill., for Sam and Vera Mitchell.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM AND ORDER

CAMPBELL, Chief Judge:

This case was tried before Judge Fred L. Wham without a jury in May of 1965. At the conclusion of the trial both parties requested an opportunity to submit briefs on the factual and legal issues. Before these briefs could be prepared and filed, Judge Wham was unfortunately taken ill and was unable to proceed with the final determination of this case.

The case was reassigned to me by the Executive Committee of this court on October 21, 1965. Extensive briefs have now been filed by the parties. Since the transcript of proceedings and the exhibits contain all of the evidence in the case, the parties have stipulated and agreed to my disposition of the case without further hearing. Although at a disadvantage in not having presided at the trial, I have been aided immensely by the exhaustive and excellent briefs of counsel for which I am deeply grateful.

This action, brought by the plaintiff-government, seeks to reduce to judgment an assessment of federal income and excise taxes made against and allegedly due from defendant Sam Mitchell, and the assessment of 1950 income taxes jointly made against defendants Sam Mitchell and Vera Mitchell, his wife.

Assuming the establishment of the tax liability, plaintiff also requests that the transfer made by defendants of certain property be set aside and the property ordered sold in satisfaction of tax liens.

Defendant, Sam Mitchell, filed monthly federal cabaret excise tax returns as owner on behalf of the Riptide Club, and the Little Club, both located in Calumet City, Illinois. Returns filed for the Riptide Club extended over a 48 month period from January 1947 through December 1950. Returns for the Little Club extended over a 25 month period from December 1948, through December 1950. The government complains that these returns were false and fraudulent in that they did not include receipts and tax liabilities for all nights on which entertainment was provided or that they overstated the proportion of receipts attributed to day hours and thereby understated the proportion of receipts attributed to evening hours when entertainment was provided and from which a tax liability arose.

The government also complains the defendant Sam Mitchell filed income tax returns for the years 1948 and 1949 which fraudulently understated his taxable income and that defendants Sam Mitchell and Vera L. Mitchell, his wife,

filed a joint return for the year 1950 which likewise fraudulently understated their taxable income for that year. In attempting to establish its allegations of understated income taxes the government has proceeded on the basis of a "net worth" theory.

The District Director has also made assessments for withholding taxes and federal unemployment taxes due from taxpayer Sam Mitchell. These assessments are not disputed and judgment is accordingly hereby entered in the amount of the taxes due together with penalties and interest.

### The Cabaret Excise Tax Returns

Cabaret excise tax returns were filed each month by Sam Mitchell as owner on behalf of two night clubs, the Riptide and the Little Club. The information and amounts of tax submitted with each monthly cabaret tax return conform with the records of the Riptide Club and the Little Club. (Govt. Ex. 16 and 17) The cabaret tax due was computed by totaling the month's receipts but excluding those receipts attributed to day sales and to evening sales when entertainment was not provided. The government argues that on certain of the dates where the clubs' records indicated no entertainment was provided, entertainment was in fact provided and cabaret excise taxes should have been paid on the receipts of these dates. The government also argues that a portion of the receipts credited to day sales when no entertainment was provided were in fact evening sales when entertainment was provided and on which a tax should have been paid.

*The Riptide Club*

A review of the voluminous transcript and the many exhibits offered herein reveals that the records of the Riptide Club indicate entertainers were contracted for, worked and received wages covering many of the evenings in which the ledgers for cabaret tax purposes indicated there was no entertainment.

Area newspapers continuously advertised entertainment every night at the Riptide Club but no cabaret taxes were paid on receipts for many of the nights from January 1, 1947 through July 31, 1948.

From August 1948 through December 1950 the Riptide Club featured taxable entertainment each evening in the form of exotic dancing. Though cabaret taxes were reported due and paid for each evening during this period, the government contends that the amount of reecipts attributed to "day sales" when no entertainment was provided were overstated and, accordingly, the taxable receipts from evening sales were understated. According to Riptide records of receipts for cabaret tax purposes during this period, over 50% of the revenue was taken in during non-taxable periods, i. e. day sales. The day sales period would run generally from 6:00 A.M. when defendant Sam Mitchell testified the Riptide opened, until 9:00 P.M. when the entertainment started. Another witness, the postman who delivered mail to the Riptide, testified that he made a morning delivery to the Riptide each morning during the years in question at 10:30 A.M. or 11:00 A.M. and each afternoon between 2:30 P.M. and 3:00 P.M. and the Riptide was closed at these times. (Tr. 134, 135)

*The Little Club*

A similar procedure was followed at the Little Club. From December 1948 to September 1949 taxable entertainment was contracted for and appeared at the Little Club six days a week. Cabaret taxes were paid only for the weekend evenings. (Friday, Saturday and Sunday)

Like the Riptide Club, during the years 1949 and 1950 the Little Club alleged that from 40% to 60% of its total receipts were earned during the non-taxable hours, i. e. day sales. Again, the alleged day sales were those which occurred prior to 9:00 P.M. The postman testified he made morning and afternoon deliveries to the Little Club each weekday and there were no customers in the Little Club at 10:30 A.M. or at 2:30 P.M. (Tr. 136) Another witness testified there were a few customers in the Little Club at 9:00

P.M. and that business increased after 9:00 P.M. (Tr. 175)

An Internal Revenue Agent testified regarding what appears to have been an exhaustive investigation into the operation of the Riptide Club and the Little Club. Based on the investigation which extended over a three year period the agent concluded that the non-taxable day sales at the Riptide amounted to no more than $30.00 per day and at the Little Club, $20.00 per day. (Tr. 358, 360) (See plaintiff's exhibits 33 and 34)

Defendants, of course, challenged this conclusion of the revenue service, but introduced little evidence to contradict it. Their evidence was unimpressive when weighed against the evidence introduced by the government. At best it establishes only that there was "some business" during the day hours and the investigation report gives credit for "some business" during the day hours, i. e., $30.-00 at the Riptide Club and $20.00 at the Little Club.

### The Question of Fraud in Filing of the Cabaret Tax Returns

The excise returns filed each month by defendant Mitchell for the Riptide Club and the Little Club contained false information either as to the number of evenings taxable entertainment was provided or the percentage of daily receipts attributable to "day sales".

In answer to the allegations of the government, defendant argues that its witness Kaufman rebutted the government's case as to sales attributed to "day sales" and that consistent with 28 U.S.C. § 1732 the books and records of the Riptide Club and Little Club stand as proof of the events as they occurred. In essence defendant argues that the government has not carried its burden of proof on the fraud issues.

As discussed above, the government introduced voluminous evidence including an extensive investigation, covering over three years, into the operation of the Riptide Club and Little Club. By the evidence introduced, the government has clearly carried its burden of proof and established its case. The evidence and testimony introduced by the defendant, including the books and records of the clubs, is not persuasive. This evidence was more than rebutted by the evidence introduced by the government.

■ A clear case of fraud in the computation and filing of the excise tax returns by defendant Sam Mitchell has been established and the government is accordingly entitled to a judgment for the assessment of interest and penalties on the tax liabilities herein.

### Income Tax Assessments

The government alleges that defendant Sam Mitchell filed income tax returns which fraudulently understated his taxable income for the years 1948 and 1949, and that defendants Sam Mitchell and Vera L. Mitchell, his wife, filed a joint return for the year 1950 which fraudulently understated their taxable income for that year.

The alleged liability has been computed through the use of the "net worth and personal expenditure" method.

In what might be described as the second phase of the income tax deficiency case, the government argues that the likely source of this unreported income established through the net-worth technique is unreported receipts from the Riptide Club and the Little Club. It then argues that additional cabaret excise taxes are due on those unreported receipts.

### Income Tax Deficiencies

Internal Revenue agents testified that they conducted an extensive investigation into the finances of defendant Sam Mitchell dating back to 1943. From this investigation they established a December 31, 1947 starting point, from which subsequent increases in assets could be measured. The agents net worth computations were introduced into evidence (Pl. Ex. 25 and 26). In the opening statement and at trial defendant's counsel stated that three items from the net worth statement were being contested. Tr. 11–13 and 518–519). The three items placed in dispute were (a) the Leaverton Promissory note; (b) oil in-

vestments; (c) a $33,000 loan by defendant to his brother (affecting only 1950).

Items (a) and (b) have been withdrawn by the government and the alleged income tax deficiency accordingly recomputed. (Pl. Ex. 36(a)).

■ Defendant now argues that the starting point established by the government is inaccurate. This contention is without merit. The investigation by the government and the net worth statement prepared by its agents adequately establish a starting point upon which a net worth case may be constructed. (See United States v. Mackey, 7th Cir., 345 F.2d 499.)

Defendant also argues that the presumptive correctness of the Commissioner's findings was destroyed when the government admitted error in withdrawing items (a) and (b). I do not agree. First, the government did not admit error in withdrawing the items from dispute. As the items were of little consequence, they were withdrawn for the sake of time and expense. Regardless, I believe the government has established its case independent of the benefit of the presumptive correctness of the assessment of the Commissioner. The accuracy of the Commissioner's assessment has not been vitiated. The burden remained with the taxpayer after the government voluntarily withdrew the two items from the assessment. (Banks v. C. I. R., 8th Cir., 322 F.2d 530)

■ The one item in the net worth statement that was disputed concerned only the year 1950 and involved a $33,000 loan by the defendant to his brother who needed financial assistance to defend a criminal action brought against him in the State of California. Defendant, Sam Mitchell, argues that much of this amount was not his money, but had been raised by loans. (See Pl. Ex. 14(a), (b), (c), (d); Tr. 528 and 533.) Yet the loans were apparently paid back in that year and presumably with funds from a taxable source. Defendants were given credit for all loans outstanding in the computation of net worth. (Sched. A of Pl. Ex. 26). Defendant, Sam Mitchell, argues that $14,200 of the $33,000 was paid back to defendant by his brother and that amount was used to repay loans to that extent. While the government questions defendants' explanation, in light of the fact that he later had to send even more money to his brother (Pl. Ex. 14 (d), still the reduction of the assessment by that amount leaves a considerable bulge unexplained. Defendants in arguing that the bulge is thus only some $600 over the taxable income as reported overlook the fact that there were personal expenditures established by the government net worth statement and unchallenged of $18,848.36 which must also be included in taxable income. Therefore, even while excluding the $14,200 allegedly repaid by defendant's brother, the otherwise unchallenged net worth statement of the government establishes that defendants had considerable taxable income in excess of the amounts reported.

Similarly, in the 1948 and 1949 years, defendant stresses (Brief p. 12) that reported taxable income was greater than the increase in net worth. As in the argument advanced for year 1950, defendant completely disregards the personal expenditures for those years, the amount of which are again unchallenged, and must be included in the reconstruction of his taxable income for those years.

*Probable Source*

■■ A final contention of the defendant is that the government-plaintiff has not adequately established a probable source of the taxable income. Yet one obvious source is unreported sales from his cabaret business, and Mitchell stated that this was his only source of income. (Tr. 85) The government is not required to show the precise source, (McFee v. United States, 9th Cir., 206 F.2d 872, reaff'd 221 F.2d 807) but must only show a source likely and capable of producing the income. (See United States v. Mackey, 7th Cir., 345 F.2d 499; Scanlon v. United States, 1st Cir., 223 F.2d 382.)

The probable source was adequately established in this case.

The income tax assessments were timely though made after three years from the due date of each return, because the taxpayer consented to the extension of time for assessment. The consents were attached to the taxpayer's income tax return for each year. (Pl. Ex. 1, 2 and 3)

■■ As to the assessment of fraud penalties on the income tax deficiencies, I find that the government did not establish the existence of such fraud by clear and convincing evidence. Though consistent substantial understatement of income is highly persuasive evidence of intent to defraud, I do not believe that such understatement in and of itself is proof enough. Prokop v. Commissioner of Internal Revenue, 7th Cir., 254 F.2d 544, and Davis v. Commissioner of Internal Revenue, 7th Cir., 239 F.2d 187 relied on by the government are distinguishable on their facts as well as in the very important point that in those cases the tax court, the finder of fact, had made a finding of fraud and the review of the Court of Appeals was limited to whether that finding was supported by the evidence. In this case, this court is the finder of fact and I do not view the evidence presented as establishing fraud insofar as the income tax deficiencies are concerned.

### Cabaret Excise Taxes Due on Unreported Sales

Having established unreported sales as a likely source of taxable income for purposes of its net worth case the government seeks to assess cabaret excise taxes on these unreported sales. Likely source, as used in the net worth case, is only, as described, a likelihood, or a probability. It need be neither certain nor precise. (See United States v. Mackey, 7th Cir., 345 F.2d 499; McFee v. United States, 9th Cir., 206 F.2d 872, reaff'd 221 F.2d 807; Scanlon v. United States, 1st Cir., 223 F.2d 382.)

■ To assess cabaret excise taxes on unreported sales requires, I believe, a truer test of the existence of such unreported sales. The government has introduced no other evidence of unreported sales. The government's claim is therefore denied to the extent that it includes cabaret excise tax assessment, penalties, and interest on alleged unreported sales.

### Fraudulent Transfer

■ The complaint charges that defendants Sam Mitchell and Vera L. Mitchell gratuitously conveyed certain real estate to the Chicago Title and Trust Company as Trustee and named Vera L. Mitchell the beneficial owner, which interest she subsequently gratuitously transferred to Sam Dale Mitchell, son of the taxpayers, and that the purpose of these transfers was to hinder, delay or defraud the United States in its efforts to collect the taxes due. (Complaint Par. XIII through XVI.) These transfers were made in 1959, after the assessments were made and when the defendants were administratively contesting the tax liabilities assessed in this case. Chapter 59 § 4 of the Illinois Revised Statutes provides in part:

"Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal * * * made with intent to disturb, delay, hinder or defraud creditors or other persons * * * shall be void as against such creditors, purchasers and other persons."

■ Any conveyance made for the purpose of defrauding or defeating the collection of taxes by the United States can of course be set aside. A conveyance, from husband to wife or from father to son, without consideration when there are creditors outstanding is presumed to be made for the purpose of defeating those creditors. (Donath v. Raffle, 14 Ill.App.2d 152, 144 N.E.2d 86; Austin v. First Nat'l Bank, 47 Ill. App. 224) The transfer of the property in question by Sam Mitchell and Vera L. Mitchell to the Chicago Title and Trust Company as Trustee and the eventual transfer of the beneficial interest in that

trust to Sam Dale Mitchell is void and set aside as against the plaintiff United States.

The attorney for the government is hereby directed to prepare an order of judgment consistent with the findings herein.