## WISELEY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11146.

United States Court of Appeals
Sixth Circuit.

Nov. 24, 1950.

Charles P. Taft, Cincinnati, Ohio, for petitioner.

S. Dee Hanson, Washington, D. C., Theron Lamar Caudle, Ellis N. Slack, Robert N. Anderson, and S. Dee Hanson, all of Washington, D. C., on the brief, for respondent.

Before HICKS, Chief Judge, and SIM-ONS and McALLISTER, Circuit Judges.

HICKS, Chief Judge.

Petitioner, Frank M. Wiseley, seeks a review of the decision of the Tax Court affirming the action of the Commissioner of Internal Revenue in assessing against him a deficiency in income taxes for the calendar year 1942 in the sum of $4,203.94 and a penalty of $2,101.97; and in assessing penalties against him of $6,149.20, $8,373.25 and $7,110.88 for the years 1943, 1944 and 1945.

There is substantial evidence to support the findings touching the deficiency for the year 1942 and the decision of the Tax Court in relation thereto is accordingly affirmed.

We are not in accord with the conclusion reached by the Tax Court with reference to the penalty assessments for any of the years involved. The Commissioner predicated these penalties upon Sec. 293(b) of the Internal Revenue Code, 26 U.S.C.A. § 293(b), which reads as follows: "(b) Fraud. If any part of any deficiency is due

to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2)."

Petitioner Wiseley is a physician. He graduated in medicine in 1924 and was one of twenty-five or more physicians practicing in his native city of Findlay, Ohio, a city of about 26,000 people at the outbreak of World War II. At that time he was forty-five years of age, married and had a highly respected family. He was Chairman of the Red Cross for his county and was the medical consultant on internal medicine for the draft boards in his area, and also a member, from the same area, of the Procurement and Assignment Committee of twelve doctors for the State of Ohio. This committee was set up by the Government to assist in determining which doctors could best be spared for service in the armed forces. War activities reduced the number of physicians in Findlay from about twenty-five to eleven.

Petitioner had his office, consisting of six small rooms, three on each side of a center hall in the First National Bank building. At the beginning of 1942 he had two women assistants, one of whom left him in July and the other in October.

On account of the reduction in the number of physicians in Findlay, petitioner, in addition to his own work, became burdened with the industrial practice of the two main war industries in the city, each with at least 1,200 employees, and with other minor industries. One of these large concerns required him to physically examine every new employee and for the others he treated all accident cases, either day or night, and all eye cases, for, on account of the war, there were no eye physicians left in Findlay. He worked from fourteen to sixteen hours a day seven days a week and took no holidays or vacations. As incredible as it may seem, he saw a top limit of from 85 to 87 patients a day, and he testified that on one day he saw 120. The assistant who left him in July was replaced by Miss Cobb, a registered nurse, twenty-nine years

old. Petitioner was unable to procure any additional assistants during the war period except an eighteen year old high school graduate who worked from June 1943 until December 1944, and another sixteen year old high school graduate who came in March 1945 and left in December. Neither of these girls could do bookkeeping and their work on the books produced complaints from patients.

Miss Cobb was the receptionist and technician. She did all X-rays, all basal metabolisms, all electro-cardiographs, prepared all tonsils for operation, and assisted in all settings of fractures and mechanical operations. She did this character of work wherever it was necessary, either at the office, in the homes of the patients, or at the hospital. She was so over-burdened as to cause many inconveniences and some financial losses to petitioner. That she was kept busy is recognized in the opinion of the Tax Court. She was also the only bookkeeper. Petitioner was not a bookkeeper. He had an adding machine but he didn't know how to use it. Miss Cobb was not experienced in bookkeeping but she kept the books and records as well as she could. She was never able to keep the records up to date although she worked at this particular feature on Sundays and in the evenings. As might naturally be expected, her health declined and finally in June 1945 she collapsed and was away from the office for several months. While she worked she made collections and kept the money and checks in a safe in the office. She did the banking and kept enough money on deposit in the bank to pay expenses. Petitioner scarcely ever wrote checks. He would occasionally take money from the safe and place it in a bank safety deposit box from which he would from time to time withdraw cash with which to buy war savings bonds and make deposits in a savings account. He never kept himself advised as to the number and value of these bonds.

While Miss Cobb worked, petitioner instructed her on various occasions to keep the books up to date, but as indicated above, she was never able to do so. Peti-

tioner filed timely estimated returns for each of the years 1942 to 1945 but he testified that he realized that until he could make amended returns he was in difficulty with his taxes.

When Miss Cobb was in declining health petitioner endeavored to procure other help. One Clifton Mygrant was employed as a bookkeeper from April 30, 1945 until about the first of August of the same year. When he left, the postings requisite for income tax purposes were not yet caught up. Petitioner was left without competent help until Miss Cobb returned some time in 1945. Upon her return, at the urgent insistence of petitioner, she made a re-examination of his books and records for the year 1943 and advised him that he had badly under-estimated his income for that year. He had Miss Cobb verify these calculations. He testified that he went at once to his friend, Brewer, President of the Cooper Tire & Rubber Company, one of the large war industries, and told him what had been found. He said to Brewer,—"I don't know anything about these things. Its all a blind spot with me and I need some help." Brewer did help. He placed his personal auditors, Mr. and Mrs. Bruce Esterly, in charge of petitioner's financial records. These auditors, in connection with Edwin Q. Brandt, a tax accountant, made a careful examination of the records and as a result petitioner filed amended returns for the years 1943, 1944 and 1945, upon which he paid additional taxes in the total amount of $44,000.07.

■ The Tax Court held that petitioner was guilty by clear and convincing evidence of filing false and fraudulent returns for each of the years 1942 to 1945 inclusive. As indicated above, we take a contrary view. It is true that the additional payments by petitioner were large but this within itself does not establish as a matter of law that petitioner was guilty of fraud.

■ The burden of proof was upon respondent, 26 U.S.C.A. § 1112, and we think that he failed to carry it. The Tax Court said,—"It matters not that he" (pe-

titioner) "personally was busy to the point of distraction (which fact we do not doubt)." We think that this fact was vitally material to the proper determination of the question whether petitioner was guilty of fraud with intent to evade the payment of his taxes.

■ In Mitchell v. Commissioner, 5 Cir., 118 F.2d 308, 310, the court said: "The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence does not establish either."

■ In Rogers v. Commissioner, 6 Cir., 111 F.2d 987, 989, we said: "Fraud cannot be lightly inferred, but must be established by clear and convincing proof. Duffin v. Lucas, 6 Cir., 55 F.2d 786."

It is a debatable question as to whether petitioner was even guilty of negligence when we remember that negligence is to be determined by what a reasonably fair minded physician would have done under similar circumstances. But this to one side, we think that there is no substantial evidence that petitioner was actuated by fraudulent intent to evade his taxes, and that the finding of the Tax Court was clearly erroneous. We think that the proof relied upon by respondent is insufficient in law to be regarded as clear, convincing or satisfying.

The Tax Court was of the opinion that the fact that petitioner followed the same course of conduct for three or four years indicated a plan to defraud the Government, but the answer to this is, that the same unfortunate circumstances continued throughout the entire period. The picture before us is that of a very busy doctor's office in wartime. His first duty was to his patients and it is not unreasonable to think that his personal affairs underwent a most severe strain.

■ The decision of the Tax Court, that there are penalties for the years 1942 to 1945 inclusive, is reversed and the case remanded for proceedings in accordance herewith. It is admitted, and the court found, that the amount paid by petitioner upon his amended returns was greater

than the aggregate of the deficiencies for the years 1943, 1944 and 1945, and we see no reason why he should not be credited with these overpayments upon the deficiency for 1942.