**Howard DAVIS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11606.**

United States Court of Appeals
Seventh Circuit.

Dec. 13, 1956.

188

Bradford S. Magill, New York City, Nelson Bohannan, Bohannan & Burton, Anderson, Ind., Naylon, Foster, Dean, Shepard & Aronson, New York City, for petitioner.

Charles K. Rice, Asst. Atty. Gen., Marvin W. Weinstein, Lee A. Jackson, A. F. Prescott, Attys., Department of Justice, Washington, D. C., for respondent.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

Petitioner-taxpayer seeks review of a decision of the Tax Court of the United States, 14 T.C.M. 294, which determined that there were deficiencies in his income tax for the years 1942 through 1945, inclusive, and found that at least part of the deficiency in each year was due to fraud with intent to evade tax. In determining that the taxpayer had understated his taxable income for the years in question, the Commissioner utilized the net worth method.

Taxpayer complains that the Commissioner was not warranted in resorting to the net worth method of proving taxable income under the circumstances in this case; that certain net worth computations were clearly erroneous; and that the Tax Court erred in holding that the Commissioner had sustained the burden of proving fraud.

As to the first question, it is taxpayer's contention that the net worth method may be used notwithstanding the presence of records only where evi-

dence of concealment or falsity exists. The Supreme Court has expressly held, however, that the net worth method is not confined to situations where the taxpayer has no books or where his books are inadequate. Holland v. United States, 348 U.S. 121, 130–132, 75 S.Ct. 127, 99 L.Ed. 150. Taxpayer's argument is the same argument rejected by the Court in the Holland case for concealment and falsity necessarily impugn the adequacy of a taxpayer's books. Although the Holland case was a criminal case, there is no reason why the analysis therein should not apply with equal force to a civil case or why the use of the net worth method should be more circumscribed in the case of a deficiency determination. See Thomas v. Commissioner of Internal Revenue, 6 Cir., 223 F.2d 83, 86.

■■ Taxpayer obviously overlooks the fact that the net worth technique of computing income is not a method of accounting. It is no more than proof of income by circumstantial or indirect evidence. If a taxpayer's net worth has increased over a period of time and the increase is not due to nontaxable receipts or nontaxable appreciation of assets, the conclusion is inescapable that taxable income has been received. The fact that the taxpayer's books and other records are consistent with his income tax returns or are internally consistent proves nothing more than that they are consistent; it does not establish that they are truthful or accurate. See Holland v. United States, 348 U.S. at pages 131–132, 75 S.Ct. at page 133. In short, the apparent adequacy of the taxpayer's books is the very thing that the net worth method attacks by independently demonstrating the receipt of unrecorded and unreported taxable income. The Holland decision makes it clear that there are no conditions precedent to the utilization of the net worth technique. The Court stated, 348 U.S. at pages 131–132, 75 S. Ct. at page 133:

"Petitioners' accounting system was appropriate for their business purposes; and, admittedly, the Gov- ernment did not detect any specific false entries therein. Nevertheless, if we believe the Government's evidence, as the jury did, we must conclude that the defendants' books were more consistent than truthful, and that many items of income had disappeared before they had even reached the recording stage. *Certainly Congress never intended to make § 41 a set of blinders which prevents the Government from looking beyond the self-serving declarations in a taxpayer's books.* * * *To protect the revenue from those who do not 'render true accounts,' the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history.*" (Emphasis added.)

See also Canton v. United States, 8 Cir., 226 F.2d 313, 322–323.

■ Furthermore, the Tax Court found that taxpayer's records were not adequate and this finding is well supported by the evidence. Taxpayer was engaged in the business of growing, buying, processing and selling popcorn. Records of purchases of popcorn and all records in connection with his farm and the processing of popcorn were maintained personally by taxpayer prior to and during the taxable years. These records, consisting of a day book kept on a cash basis, were destroyed by fire subsequent to the start of an investigation of his income tax returns. From 1940 until the middle of 1944, records of taxpayer's popping operations were maintained by his plant manager. Thereafter, these records were maintained by another employee in accordance with instructions from taxpayer's accountant. The record indicates, and the Tax Court so found, that taxpayer did not keep an accurate record of inventory and purchases which were undoubtedly important in determining his net income. And the parties had stipulated that there was unreported income, in substantial amounts, from the farm owned by peti-

tioner and his mother in the years 1942, 1943 and 1944. This fact alone contradicts taxpayer's contention that his farm records were accurately maintained. The taxpayer himself admitted the inadequacy of his books and records in a letter written to a bank stating that "Until January 1945 I did not have an adequate set of books for the volume of business I was doing." Taxpayer's attempt to explain away this admission is not convincing.

No useful purpose would be served by repeating the history and ramifications of taxpayer's business activities and we shall limit ourselves to such detail as is necessary to the particular questions raised. Apart from the propriety of using the net worth method, taxpayer attacks the accuracy of the Commissioner's determination of opening net worth on January 1, 1942, in two particulars: cash on hand and popcorn inventory.

Cash on Hand. The Commissioner determined that taxpayer had $933.00 in cash on January 1, 1942. This amount was taken from a financial statement, certified by taxpayer, that was submitted by him to a bank to obtain a loan. Taxpayer's contention that he had additional cash is refuted by his testimony that he used all of his cash and the money he could borrow to buy substantial quantities of popcorn during the latter part of 1941. On cross-examination, taxpayer was repeatedly asked to state any assets which he owned that were not listed on the financial statement and he could not recall any. After a luncheon recess taxpayer "remembered" that he had a cash hoard of $150,000.00 which had been hidden on his farm since 1936. Taxpayer's financial history negates the existence of such a cache. Between January 1, 1935 and December 3, 1941, taxpayer has a record of continuous borrowings from the Pendleton Banking Company. As to the question of a likely source for the cash, which taxpayer did not attempt to explain, the record shows that he did not file an income tax return prior to the year 1942 when he filed a nontaxable return for 1941. In addition, there is no record that his parents ever filed an income tax return and his father, who died on February 14, 1934, left personal property appraised at only $10,653.03.

We think the Tax Court was generous in fixing $933.00 as the amount of cash on hand at the beginning of the net worth period. Taxpayer's financial statements, considering other evidence in the case, furnished a substantial basis for the court's finding on this question, see Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336, 340, and we cannot say that the finding was clearly erroneous.

Inventory. Taxpayer's income tax return for the year 1942 reported an opening inventory on January 1, 1942, of $9,221.46. This amount was used by the Commissioner in computing taxpayer's initial net worth. The Tax Court, however, found that the inventory was $31,-352.00, the amount certified by taxpayer to be his inventory in April 1942, in a financial statement submitted to a bank. Taxpayer insists that certain purchase contracts for popcorn which would have increased his inventory were not taken into account. The Tax Court's finding of fact cannot be set aside unless clearly erroneous and due regard must be given to the opportunity of the court to judge the credibility of the witnesses. The taxpayer's admissions clearly contradict the amounts contended for by him and the evidence refuted the existence of an inventory in excess of the amount found. The Tax Court was justified in rejecting taxpayer's "wholly unsupported testimony" and we cannot say that its finding in this regard is clearly erroneous.

Taxpayer argues that there was no showing of a likely source to explain the increase in net worth. There was ample evidence that substantial amounts of income had not been included in taxpayer's books and records. It was shown that taxpayer was engaged in a profitable business of considerable dimensions; that the business was capable of producing much more income than was reported and was sufficient to account for the increase in net worth; that taxpayer

could not have received any large inheritances or gifts from his parents; and it was stipulated that he received income in excess of the amounts reported on his tax returns. Statements given to banks by taxpayer established an even larger increase in net worth than the amount determined by the Tax Court. Taxpayer's only evidence in this regard purports to show that because of governmental price regulations his business could not have produced such income as is shown by the net worth computations. The testimony as to profit percentages, upon which taxpayer relies, applied only to the profit of a popcorn processor. However, processing was only one aspect of taxpayer's business; his activities encompassed growing, buying, processing and popping of corn. Further, even when the profit percentages contended for by petitioner are used, his income was still far greater than that shown on his tax returns.

■ Finally, taxpayer contends that the Tax Court erred in finding that a part of the deficiency for each of the taxable years was due to fraud with intent to evade tax. The question whether taxpayer filed returns with intent to evade tax is a question of fact and the burden of proof is upon the Commissioner. Kurnick v. Commissioner of Internal Revenue, 6 Cir., 232 F.2d 678; Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336. The Tax Court's finding on the issue of fraud is entitled to finality unless clearly erroneous. Bodoglau v. Commissioner of Internal Revenue, supra. Taxpayer reported income of $57,856.88 during the years in question when his actual income during this period was $280,489.49. Understatement of income alone is not proof of fraud, Wiseley v. Commissioner of Internal Revenue, 6 Cir., 185 F.2d 263, but consistent, substantial understatement of income is highly persuasive evidence of intent to defraud. See Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127; Kurnick v. Commissioner of Internal Revenue, 6 Cir., 232 F.2d 678, 681; Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336, 341.

■ Taxpayer's financial statements made over a period of years indicate that he knew his net worth was increasing and that his tax returns did not correctly record this increase. More specifically, a letter written to taxpayer by his accountant stated that for the period from January 1, 1945 to October 31, 1945, taxpayer's income from his business was $59,-745.56 on a cash basis and $116,906.50 on an accrual basis, yet he reported income for the year of only $26,594.96. The record also shows that there was little relation between taxpayer's personal expenditures and his reported income; that in at least two of the taxable years he was spending money in excess of the amounts reported by him. In addition, taxpayer admittedly failed to report substantial amounts of income from his farm. Fraud may not be lightly inferred, Rogers v. Commissioner of Internal Revenue, 6 Cir., 111 F.2d 987, but the evidence in this case is clear and convincing. We hold that the Tax Court's finding in this regard has substantial support in the record and should not be disturbed by this court.

The decision of the Tax Court is affirmed.