Alice V. PROKOP and Harry W. Prokop. Petitioners,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

COMMISSIONER OF INTERNAL REV-ENUE, Petitioner,

v.

Alice V. PROKOP, Respondent.

Nos. 12163, 12164.

United States Court of Appeals Seventh Circuit.

April 15, 1958.

As Corrected May 8, 1958.

Rehearing Denied May 29, 1958.

Chester J. Niebler, Marshall J. Herro, Milwaukee, Wis., for petitioner Prokop.

Charles K. Rice, Asst. Atty. Gen., S. Dee Hanson, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, II. Baum, Attys., Dept. of Justice, Washington, D. C., for C. I. R.

Before FINNEGAN and SCHNACK-ENBERG, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

The petitioners, Harry W. Prokop and Alice V. Prokop, are husband and wife and were at all times pertinent to this case. For the year 1944 they made a joint income tax return and this is the sole involvement of Harry W. Prokop in these proceedings. For the years 1945, 1946, and 1947 they made individual returns and those years affect Mrs. Prokop only. In their respective returns the income so reported by each was the

salary earned in their respective employments—Mr. Prokop as a salaried social worker and Mrs. Prokop as a salaried employee of Local No. 494, International Brotherhood of Electrical Workers, Milwaukee, Wisconsin. The United States Commissioner of Internal Revenue, respondent, acting upon reports of investigations of revenue agents, found that Alice V. Prokop had received unreported income for each of said years and from such reports determined that the understatements of income by Mr. and Mrs. Prokop were $43,920.16 for 1944; and by Mrs. Prokop, $46,073.93 for 1945; $39,811.68 for 1946; and $1,941.34 for 1947. Based on these understatements of income the Commissioner determined deficiencies in taxes with statutory additions as follows:

| Year | Deficiency | —Additions To Tax Under— | |
| | | Sec. 293(b) | Sec. 294(d) |
| --- | --- | --- | --- |
| 1944 | $25,290.32 | $12,645.16 | $1,510.35 |
| 1945 | 25,868.45 | 12,934.23 | 4,143.10 |
| 1946 | 19,424.18 | 9,712.09 | 3,127.39 |
| 1947 | 411.55 | 205.78 | 74.56 |

Proceedings to redetermine and abate the deficiencies and additions as determined by the respondent were initiated in the Tax Court of the United States by the petitioners where the proceedings affecting Mrs. Prokop only were designated as Case No. 49495 and that based on the joint return affecting both Mr. and Mrs. Prokop as No. 49496. The two cases were consolidated for trial. A stipulation of facts was entered into between petitioners and respondent and voluminous other evidence, including both oral testimony and numerous exhibits, was received. Based upon the entire evidence the judge wrote an exhaustive opinion in which detailed findings and conclusions were expressed.

In Tax Court Case No. 49495 which involved Alice V. Prokop only, deficiencies and additions were determined as follows:

| Year | Deficiency | Sec. 293(b) | —Additions To Tax Under— Sec. 294 | |
| | | | (d) (1) (A) | Sec. 294(d) (2) |
| --- | --- | --- | --- | --- |
| 1945 | $17,575.10 | $8,787.55 | $1,584.07 | $1,056.05 |
| 1946 | 13,151.06 | 6,575.53 | 1,194.59 | 796.38 |

The Tax Court further determined that no deficiency or additions for the taxable year 1947 was shown by the evidence due to the fact that the payment by Mrs. Prokop of $36,000 to the Union wiped out all unreported income received by her during that year.

Tax Court Case No. 49496 by reason of said joint return for the year 1944 by Mr. and Mrs. Prokop involved both. Deficiency and additions were determined as follows:

| Year | Deficiency | —Additions To Tax Under— | |
| | | Sec. 293(b) | Sec. 294(d) (2) |
| --- | --- | --- | --- |
| 1944 | $17,381.70 | $8,690.85 | $1,035.83 |

The foregoing decisions were entered by the Tax Court on June 27, 1957. A timely petition for the review of both decisions, consolidated for review under Case No. 12163, was filed in this court. From the petition and the evidence it appears that the petitioners are and at all times have been resident citizens of Milwaukee, Wisconsin, and filed their income tax returns for the years here involved with the Collector (now Director) of Internal Revenue for the District of Wisconsin at Milwaukee, Wisconsin, within the jurisdiction of this court.

■ As noted above, the Tax Court held there was no deficiency in the year 1947 and reduced deficiencies were determined for the years 1944, 1945 and 1946. Also the enlarged deficiencies sought in respondent's amended answer were denied by the Tax Court. Respondent does not complain here of those decisions. In view of the conclusions of this court hereinafter appearing which uphold the decisions of the Tax Court respondent's alternate petition for review filed herein under No. 12164 to be considered only if this court failed to sustain the Tax Court is no longer in issue. The issue remaining before this court is whether the deficiencies and additions redetermined by the Tax Court for the years 1944, 1945 and 1946 are sustainable. There is no quarrel between petitioners and respondent as to the correctness of the computation of taxes and additions by the Tax Court if the amounts of the deficiencies as redetermined by the Tax Court for the years 1944, 1945 and 1946 are not altered by this court. Petitioners contend earnestly, however, that under the evidence it should be held that Mrs. Prokop received no unreported income for said years and that neither she nor her husband was guilty of fraud or negligence in failing to report taxable income received by her.

From the stipulation of facts introduced in evidence in the Tax Court it appears that Mrs. Prokop was employed by Local 494, International Brotherhood of Electrical Workers, Milwaukee, Wisconsin, from October, 1930 to September 25, 1947; that she and her husband had different employers and received separate incomes; that she and her husband filed a joint income tax return for the taxable year 1944; that Mrs. Prokop filed her separate income tax return for each of the years 1945, 1946 and 1947; that in each return for the years 1944 to and including 1947 she reported only her income earned as bookkeeper, stenographer, office manager and as secretary; that for the year 1944 the joint return showed only the salary received by each of them.

It was further stipulated that of the permit fees collected for said local Union from permit workers during 1944, 1945, 1946 and from January 1 to September 25, 1947 the books of the Union reflected only amounts as follows: 1944, $9,479.-84; 1945, $7,326.07; 1946, $13,588.32; 1947 to September 26, $22,485.60.

The question of fact posed by the record is whether permit fees came into the hands and custody of Mrs. Prokop during the years 1944, 1945 and 1946 in addition to those reflected on the books of the Union, as stipulated, and which became income for tax purposes returnable by her and, if so, in what amounts. A brief review of the evidence becomes necessary.

As indicated Mrs. Prokop was an employee of said Local 494 approximately seventeen years in the capacity of bookkeeper, clerk, secretary and office manager. She was discharged on September 25, 1947. Through the years her knowledge of and familiarity with the Union business affairs and practices became extensive and were recognized as being so by Union employees and officers. Increasing authority was placed upon or was assumed by her. In addition to her other duties she early became the secretary of Edward J. Brown, business manager of Local 494. In practice the business manager was the active authority in the operation of the local Union recognized by the other officers and employees. While retaining his office of business manager of the local Union said

Brown also became and filled the office of President of the International Brotherhood of Electrical Workers, first, by appointment from 1940 to 1942, and, by election, from 1942 to 1946. In 1946 he failed of reelection as President of International and returned to Milwaukee where he continued to act as business manager of Local 494. He was discharged by the Union in September, 1947, not on the stated ground that he had diverted or authorized diversion of Union funds but by reason of evidence that he had become financially interested in a corporate contractor in the electrical contracting business. He died in Washington, D. C., January 31, 1950. Brown lived in Washington, D. C. practically all of the time he served as President of International. During this time he delegated much of his authority to Mrs. Prokop and permitted her to exercise authority as his representative. This authority she was permitted to exercise without question by Edgar Fransway who was appointed by Brown first as business representative and later as acting business manager, as well as by other officers of Local 494. Among other privileges, she, with the knowledge of the Local's executive board, was permitted to sign the name of the Union treasurer to vouchers authorizing payments out of Union funds. She had access to the safe located in the Union office and was customarily the person who would open it to place in or withdraw funds and other contents from it. She had access to two of the three safe-deposit boxes used by the Union located in different Milwaukee banks used for keeping money and valuable papers.

Local 494 required all workers employed by electrical contractors who were not regular members of the Local to secure permits for which a fee was charged.

During the years 1944 to 1947, inclusive, Mrs. Prokop was in full charge of collecting permit fees from such temporary permit workers. In this she was assisted from October, 1943 to September 1947 by Evelyn Sadowski who was employed in the office of the Local and worked under Mrs. Prokop. Mrs. Prokop authorized her to receive such permit fees and account for and turn them over to her. Mrs. Prokop also collected delinquent accounts of temporary permit workers; also permit fees collected from non-regular card holders unqualified for regular Union membership but who desired the privilege of working for the electrical contractors who employed only Union members or permit holders; also from members of other locals who wanted to work through Local 494. The last class mentioned were required to pay the difference between the cost of the dues they paid to their locals and the dues members of Local 494 were required to pay.

The largest group of non-card holders during the years 1944 through 1947 from whom permit fees were collected were apprentices in the local area who were not regular members of the Union. During the year 1944 and part of 1945 they paid their fees on a percentage basis of four per cent of their total gross earnings shown on their pay stubs. For not more than a year within the 1945–1946 period the charge was reduced to two per cent. Thereafter, in 1946 and through all of 1947 the charge was again four per cent. There were several hundred permit workers, at times as many as 500, paying such fees. There were 474 individual persons listed as paying permit fees during the months of August and September, 1947. The average wage of the more highly paid and greater number of such permit workers upon which the permit fees were collected was $90 to $100 per week. The wage of some of the lower class of permit workers who were the fewest in number was as low as $50 to $60 per week.

In order to insure that permit workers paid their fees when due each of the electrical contractors employing men from the Union was required to submit a monthly pay roll report reflecting the individuals employed by them and the amount earned by each. By referring to this list at the Union office it could be

ascertained who were working on permits and the earnings of each individual. Fees were collected and permits issued on a monthly basis. When a permit member was due to pay his fee usually he or his wife would come to the Union office with a pay check stub and present it to Mrs. Prokop or to Evelyn Sadowski. His fee would then be computed and the resultant amount collected. The permit member was then given a receipt for the charge, and the amount paid and the date of the payment were noted on the back side of a 3″ x 5″ card on which a record of such collections was kept in the Union office.

During the years in question Evelyn Sadowski was accountable to Mrs. Prokop for all fees collected by her from such permit workers, and made periodic settlements with her. Before such accountings Mrs. Prokop would, as she pleased, take cash from Mrs. Sadowski's collections and put in an I.O.U. slip. At each accounting, depending on the number of permit workers employed and the period elapsing between the times when such collections were balanced, the amount paid over to Mrs. Prokop usually ranged between $500 and $1,000. The amounts collected from the permit members by Mrs. Prokop herself were temporarily placed in a drawer in her desk or in the office safe to which she had free access.

During the years 1944 to 1947, inclusive, Mrs. Prokop maintained a safe-deposit box in her own individual name in the State Bank of Milwaukee (now known as the Bank of Commerce) wherein she kept her own property and money. The fees which were not recorded on the Union books were kept by Mrs. Prokop in her personal safe-deposit box at the State Bank of Milwaukee or in such other places and depositories as she chose. No one connected with the Union other than Mrs. Prokop knew how much was being collected from permit workers. She only had the authority to collect the permit fees and to record them on the Union books. Each year the Union auditor, now deceased, examined

the books and records of the Union maintained by and under Mrs. Prokop but the permit fee collections were not verified in his so-called audit. In June of 1947 said auditor disclosed to officers of the Union that the Union records presented to him each year did not include data as to permit fee collections. In the late summer of 1947 it was decided by Mr. Fransway and other officers of the Union to have an audit of Union funds conducted by Maurice Ritz, a Certified Public Accountant.

When the auditor, Ritz, went to the office of Local 494 on or about September 8, 1947, and informed Mrs. Prokop of his purpose she told him that no audit was needed as one had recently been made; also that she was busy and could not work with him at that time and for him to return a day or two later. The auditor agreed, left the office and returned on September 12, 1947. In the meantime, Mrs. Prokop, in collusion with and with the assistance of Edward J. Brown took from the office and made unavailable all records from which the amounts and times of collection of the permit fees not recorded on the books could be determined for the years 1944, 1945, 1946 and 1947. She directed her assistant, Evelyn Sadowski, to give the auditor no information. When the auditor returned to conduct the audit he found other books and records but no records of the permit fee collections other than those recorded on the books. Such collections were not recorded as permit fees but as "miscellaneous income". The 3″ x 5″ cards on which, as shown by the evidence, the data covering unrecorded permit fees had been kept were not in the office and were never made available. The Union's copies of the pay rolls furnished by the various contractors who used Union help and from which the information concerning permit fees could have been obtained were not found or made available. The evidence shows that the pay rolls were taken to the home of Brown at his request by Mrs. Prokop and the 3″ x 5″ cards were taken to the home of Mrs.

Prokop. There is strong evidence that the pay rolls were destroyed by Brown and that the 3″ x 5″ cards were destroyed or otherwise made unavailable by Mrs. Prokop.

By securing from the contractors access to their records and to their copies of the 1947 pay rolls the auditor was able, after tedious labor, to form what he testified were approximate estimates of the amount of permit fees collected in 1947. He was unable to secure pay rolls and records from the contractors covering earlier years and was unable to form approximate estimates of amounts collected in 1944, 1945 and 1946 but upon insistence of the Union officers, though approximation was impossible, he made unsure estimates of the amounts of fees collected in 1944, 1945 and 1946. Growing out of his figures it was decided that the unrecorded fees for 1947 from January 1 to September 26 were at least $10,407. This amount was paid to the auditor by Mrs. Prokop on October 31, 1947. Though he was unable to secure contractors' records and pay rolls for 1944, 1945 and 1946, his further calculations and estimates covering those years, including the part of 1947 prior to September 26, of collected fees not recorded on the books of the Union as testified by him was a minimum of $40,-000, and a maximum of $100,000 or more. Ritz told Union officials that in all probability, because there was scarcity of evidence to support his findings he doubted whether more than $40,000 could be recovered in court and the Union officials after much argument agreed that a total of $36,000 would be accepted by the Union in full settlement of all withheld permit fees and all claims of every nature growing out of such withholding and all other acts. Having already paid $10,407 on October 31, 1947 Mrs. Prokop paid the remainder of the $36,000 on November 4, 1947 and received a full and complete release. Brown was not present when the final settlement was concluded and his name did not appear on the release although he had it prepared by his attorney. Apparently he sought no personal release and avoided being present at the meeting.

The testimony of Mrs. Prokop was to the effect that the money she paid to make up the $36,000 for the settlement was delivered to her in cash by Brown; that he came to her home, spoke to her husband and accompanied her to the kitchen where he produced a muddy cash box which he said he had dug up near the tree by the creek; that she had told him by telephone before he came that she needed $36,000; that she had not told him in the telephone conversation how much was involved; that Brown counted out the $36,000 to her in the kitchen and left; that there was additional money in the cash box which he took away with him; that she met the officers the next morning and following Brown's suggestion that she not pay it all in cash but in part by using proceeds of bonds she paid the remainder of the $36,000, partly by using bonds and other assets, and received a receipt which was in the nature of a release which Brown had had prepared by his attorney; that Brown was not at the meeting and his name did not appear in the release. The amount of $36,000 shown in the release, taken by Mrs. Prokop, was subsequently altered by her and still later by her was restored to its original amount.

From evidence in the record the Tax Court found that Mrs. Prokop admitted that a substantial amount of permit fees collected by her and under her direction was neither recorded on the books and records of the Union nor deposited to its credit but also found that she denies having diverted any Union funds for her own benefit; that in essence, it is her claim that she took the unrecorded permit fees pursuant to the explicit instructions of her superior in office, Edward J. Brown, that a substantial portion of such fees were used at Brown's direction to defray unauthorized expenditures of the Union for illicit activities; that she turned over the balance of such fees to Brown; that, in the alternative, Mrs. Prokop contends that if it be held that she retained any of the permit fees

for herself (which she denies) such amounts are immune from taxation under the decision of the Supreme Court in Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752.

In commenting on Mrs. Prokop's testimony the Tax Court said:

"The primary issues presented to us are factual, and the question of Alice Prokop's credibility is of great significance. It is so apparent from the record, however, that she is unworthy of belief, that we need only say, without a detailed analysis of the evidence, that her testimony cannot be relied upon. Participation in fraud against the Union, fraudulent alteration of the amount stated in a release, unauthorized endorsement and cashing of checks, and the failure to perform her duty to enter on the books the receipt of permit fees are a few unquestioned circumstances which clearly characterize her.

"Upon consideration of the entire record and for the reasons hereinafter stated, we are convinced that petitioner (no doubt in collusion with Brown) during the years 1944 through 1947, inclusive, diverted a substantial amount of the unrecorded permit fees in issue to her own benefit, and that such amounts (which we have found to be less than determined by respondent) constitute taxable income to her in each of those years."

As appears from the record, Mrs. Prokop testified at great length before the Tax Court and was vigorously cross-examined. She was unable to support by any record or otherwise any part of her testimony favorable to herself for the reason that due to her willful and improper conduct all the records which might or might not have supported her testimony in whole or in part had been destroyed or had not been kept by her in the first instance. The judge of the Tax Court heard her testify and observed her demeanor on the witness stand. It was his duty to weigh her testimony. He disbelieved her. On the other hand, he observed and heard the testimony of the witnesses for the respondent which in large measure conflicted with the testimony of Mrs. Prokop and accepted their testimony as true. He found that the evidence supported respondent's contention that she had understated and failed to report substantial amounts of taxable income received by her and in so doing was guilty of fraud.

Based upon the evidence relating to the large number of men working upon permits issued by Local 494 through the pertinent years, their comparatively high wages and the percentages of their wages collected from them by and through Mrs. Prokop the Tax Court was of opinion that the Commissioner acting in the light of the reports of the investigating revenue agents had conservatively estimated and determined the amount of fees Alice Prokop had received during said years and had not accounted for on the records. The Tax Court recognized, as the respondent seemingly failed to do in adequate measure, that the insistence by Mrs. Prokop that not all of the fees diverted by her from the Union into her own hands became her own income was supported somewhat by circumstances shown by the evidence and by reasonable inferences therefrom. The Tax Court was of opinion and with this we agree that the evidence tends to show that some of the diverted funds finally lodged in the hands of Brown and certain other portions were used in connection with Union activities. That the Tax Court was unable to estimate with certainty the portion that remained in the hands and possession of Mrs. Prokop and the portions that went to other persons and purposes cannot be a matter of complaint on the part of Mrs. Prokop. The funds all passed through her hands, aside from the fractional part entered in the books, but she kept no records of what became of the part not entered on the books. The Tax Court recognizing that under the circumstances shown by

the evidence that some of the money probably did go to Brown and to Union purposes directed by him, though having no means by which to determine how much, but in an effort not to be unjust to Mrs. Prokop, pursuant to the principles declared in Cohan v. Commissioner of Internal Revenue, 2 Cir., 39 F. 2d 540, 543, reduced by twenty-five per cent the amount of the deficiencies and additions determined by the respondent. Respondent has not complained of this redetermination of deficiencies and additions and it stands unchallenged by petitioners except as they challenge the decision in its entirety.

In the trial of the case respondent in an effort to throw light on the hidden transactions between Mrs. Prokop and Mr. Brown offered evidence of an investigation of the net worth of the parties and evidence concerning their private financial transactions during the years in question and those that followed. Such investigation failed to develop evidence that Brown had received the major part of the diverted funds. The extent and character of his estate at the time of his death was not inconsonant with his having received a portion of the diverted funds. On the other hand, the net worth and increase in the extent of the holdings of Mr. and Mrs. Prokop; real estate transactions entered into by them involving output of approximately $35,000 in cash after which they still had assets of over $12,000 and the further fact that Mrs. Prokop herself came up with the $36,000 in October and November, 1947 upon which her release from further obligation to the Union was procured were considered by the Tax Court as being in keeping with her having retained the major portion of the diverted funds. The Tax Court believed the testimony of Evelyn Sadowski Rider that Mrs. Prokop not only had the 3″ x 5″ cards which bore the information removed from the office and made unavailable for examination but that she exhibited to her a box of cash in her home. The Tax Court did not consider credible Mrs. Prokop's story that she obtained the $36,000 in cash from Brown taken in her presence from a muddy cash box. The court was in part influenced to disbelieve this evidence by the fact that she cashed her own bonds and used her own deposits in substantial amounts instead of cash in assembling said amount. Mrs. Prokop is not in position to complain if the findings made by the Tax Court are inexact. As the court said in Cohan v. Commissioner of Internal Revenue, supra: "Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."

As a factual problem we are of opinion that the decision of the Tax Court is supported by the evidence and the reasonable inferences that may properly be drawn therefrom and must be sustained unless there be some error of law as urged by petitioners which requires another result.

■ Petitioners complain that the Tax Court left upon them the burden of establishing error in respondent's determination of deficiencies and additions. That the Tax Court applied a correct principle of law in so doing is shown by applicable authorities. The Tax Court did not misapply this principle. It relied upon the presumption of correctness of the Commissioner's determination only with relation to the area in which Mrs. Prokop had failed to keep records when it was her duty to keep them and in which she had participated in rendering unavailable records that were kept. Since she failed to produce any evidence of incorrectness on the part of the Commissioner's determinations outside of her own unsupported testimony which the trial judge believed to be unreliable and incredible and since the record failed to show any evidence of incorrectness it cannot be said that it was error for the Tax Court to find that no evidence had been produced that served to overcome the presumption of correctness that supports the assessments

made by the Commissioner until overcome by credible proof. 47 C.J.S. Internal Revenue § 709 a, pages 936–937, and cases cited in Footnotes 45 and 46; Viles v. Commissioner of Internal Revenue, 6 Cir., 233 F.2d 376, 379; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. The assessments by the Commissioner were properly based upon the reports of the responsible revenue agents and under the law were entitled to a presumption of correctness until overcome by credible proof. As a matter of fact, the record contains evidence which clearly tends to support the conclusion that the total amount of unrecorded fees received by Mrs. Prokop was more than the total determined by the Commissioner. The number of permit holders, their average wage and the percentage of such income taken as fees all as shown by evidence gives a foundation for computation of an even larger sum of income withheld than the total found by the Commissioner. As stated by the court in Halle v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 500, at page 503: "The decided cases clearly show that we cannot here disturb the Tax Court's findings as to the deficiencies in the taxpayer's income tax."

The Tax Court was of opinion, however, and we share in this view, that the evidence sustained the determinations of respondent except in so far as respondent failed in the Court's judgment to make adequate allowances for the part of the fees collected and unaccounted for by Mrs. Prokop that may have gone to Brown or to hidden Union activities. We approve the application here of the principles declared in the Cohan case, supra, in interest of fairness. In that case the court said, 39 F.2d at page 544: "It is not fatal that the result will inevitably be speculative; many important decisions must be such." See also: Rogers v. Commissioner of Internal Revenue, 7 Cir., 248 F.2d 452; Bodoglau v. Commissioner of Internal Revenue, 7 Cir., 230 F.2d 336; Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, at page 594, 63

S.Ct. 1279, at page 1282, 87 L.Ed. 1607. In Rogers v. Commissioner of Internal Revenue, supra, this court approved the application of the Cohan rule in a case, as here, that could not be resolved with exactitude.

■ Petitioners contend on the authority of the case of Commissioner of Internal Revenue v. Wilcox, supra, that if any permit fees are found to be in the hands of Mrs. Prokop they are in the nature of embezzled funds and not taxable income. We are of opinion that this case is not controlled by the Wilcox case. In that case the court said [327 U.S. 404, 66 S.Ct. 649]:

"Had the taxpayer used the embezzled money and obtained profits therefrom such profits might have been taxable regardless of the illegality involved. Or had his employer condoned or forgiven any part of the unlawful appropriation the taxpayer might have been subject to tax liability to that extent. * * * Sanctioning a tax under the circumstances before us would serve only to give the United States an unjustified preference as to part of the money which rightfully and completely belongs to the taxpayer's employer."

Mrs. Prokop, here, was never charged with or proceeded against for embezzlement. By negotiation she agreed to pay and paid to the Union a definite sum of money in settlement of its claim against her and was given a full and complete release. Any money that had come to her by way of permit fees thus became free of any conflicting rights in the Union. This case is more like Kann v. Commissioner of Internal Revenue, 3 Cir., 210 F.2d 247, and Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L. Ed. 833. The latter case limited the authority of the Wilcox case to its precise facts. In the Wilcox case taxpayer had embezzled funds; had been prosecuted for and convicted of embezzlement; his act had not been condoned nor forgiven by his employer; the embezzled funds in his hands continued to be the property of

his former employer. Here Mrs. Prokop was not charged with embezzlement and whether or not her withholding the permit fees from her employer legally amounted to embezzlement the release she received from Local 494 left no claims by the Union outstanding against her.

■ Petitioners contend that the permit fees retained by Mrs. Prokop did not become taxable income attributable to the year in which it was collected or at any time preceding the date of her settlement with the Union. In view of Rutkin, supra, and other like authorities this contention cannot be sustained. In the Rutkin case which involved ill-gotten gains by extortion the court said in 343 U.S. at page 137, 72 S.Ct. at page 575:

"An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439, 1443; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916, 917. That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it.

"Such gains are taxable in the yearly period during which they are realized. * * * There is no adequate reason why assailable unlawful gains should be treated differently in this respect from assailable lawful gains. Certainly there is no reason for treating them more leniently. United States v. Sullivan, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L. Ed. 1037, 1039, 51 A.L.R. 1020."

Other cases applicable here: United States v. Wyss, 7 Cir., 239 F.2d 658; Dawkins v. Commissioner of Internal Revenue, 8 Cir., 238 F.2d 174; Kann v. Commissioner of Internal Revenue, supra. We concur with the ruling of the Tax Court "that the diverted funds are taxable under Section 22(a) in the years in which diverted."

■ Petitioners further contend that the Tax Court erred in finding petitioners guilty of fraud. The Tax Court found upon the evidence that the petitioners in the year of 1944 understated income in the amount of $32,940.12 and that Mrs. Prokop understated her income for the years 1945 and 1946 in the repective sums of $34,555.45 and $29,858.76. Examination of the record shows substantial evidence in support of those findings. Whether or not such understatements were due in whole or in part to fraud presented a question of fact for determination by the Tax Court and its determination is final, if supported by substantial evidence and is not shown to be clearly erroneous. Helvering v. Kehoe, 309 U.S. 277, at page 279, 60 S.Ct. 549, at page 550, 84 L.Ed. 751; Davis v. Commissioner of Internal Revenue, 7 Cir., 239 F.2d 187, 191. In the latter case Judge Swaim, speaking for this court, said:

"The Tax Court's finding on the issue of fraud is entitled to finality unless clearly erroneous. Bodoglau v. Commissioner of Internal Revenue, supra. * * * Understatement of income alone is not proof of fraud, Wiseley v. Commissioner of Internal Revenue, 6 Cir., 185 F. 2d 263, but consistent, substantial understatement of income is highly persuasive evidence of intent to defraud."

The Tax Court was of the opinion based on the evidence that Alice Prokop had followed a willfully fraudulent course in obtaining substantial amounts of income during the years in question, in failing to report such income and in hiding and destroying evidence showing that such income had reached her hands. We cannot say that the Tax Court's finding was not supported by the evidence.

■ It having been held that the findings of the Tax Court must be sustained as to deficiencies, fraud and penalties as to Alice Prokop a similar holding must prevail as to her husband, Harry W. Prokop, who made a joint return for 1944 with his wife. This the Tax Court held, citing as authority Howell v. Commissioner of Internal Revenue, 1948, 10 T.C. 859, affirmed 6 Cir., 175 F.2d 240. No argument to the contrary has been interposed. This holding of the Tax Court will likewise be sustained.

The decision of the Tax Court is

Affirmed.

FINNEGAN, Circuit Judge (concurring in the result).

It seems plain that by releasing Mrs. Prokop, the Union waived all its rights and claims in sums exceeding $36,000, leaving this taxpayer well outside the scope of Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 66 S. Ct. 546, 90 L.Ed. 752.