CLAYTON M. KORECKY, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Korecky v. Commissioner
Docket No. 3801-81.
United States Tax Court
T.C. Memo 1985-63; 1985 Tax Ct. Memo LEXIS 569; 49 T.C.M. (CCH) 727; T.C.M. (RIA) 85063; February 12, 1985. Stephen G. Salley and Martha A. Hartley, for the petitioner. James W. Clark, for the respondent. HAMBLEN
*727 MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: *728 Year
Deficiency
Sec. 6653(b) [1]
1972
$9,407.43
$4,703.72
1973
$11,001.87
1974
$15,311.83
$7,655.92
*570 After concessions, the only issue for decision is whether petitioner is liable for the additions to tax pursuant to section 6653(b) for the years 1972, 1973, and 1974. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Cocoa, Florida, when he filed his petition in this case. Petitioner completed an eighth grade education. He left school and started working in a bait and tackle store. When petitioner was approximately 21 years old, he left the store and began working at his grandmother's motel. Petitioner and his now deceased wife, Carlena, managed the motel. In 1962, *571 *3 petitioner, Carlena and their daughter each inherited a one-third interest in the motel. Petitioner continued to operate the motel until 1972. In the mid-1960's petitioner began crab fishing, and in 1970 petitioner began operating Clayton's Crab Company ("Company") and became involved in crab processing as well as crab fishing. The Company operated as a sole proprietorship, which was located in the erstwhile motel. As the motel business was not profitable, petitioner devoted himself solely to his crab business. In 1973, the Company added retail sales to its activities. Petitioner was a cash basis taxpayer during the years in issue. At approximately the same time petitioner entered into the motel business he began taking his income tax returns to Wages Bookkeeping Service, where James Preece ("Preece") prepared his returns. Preece was not a certified public accountant. In 1966 Preece began his own bookkeeping and tax preparation service, Atlantic Bookkeeping. Petitioner's returns for the years 1966 through 1969 were prepared by Preece. Prior to 1970, petitioner did his own bookkeeping work. Petitioner's 1970 and 1971 returns were prepared by Neil Walker ("Walker"). *572 Walker also did some bookkeeping for petitioner. However, petitioner did the payroll for the business. In 1972, petitioner hired Preece to perform bookkeeping services for the Company and to prepare his tax returns. Preece performed these services for the years 1972 through 1975. Preece's bookkeeping activities for petitioner consisted of *4 determining the gross sales of the Company through sales invoices, determining expenses of the Company from check stubs, bills and payout slips, doing payroll for the Company's employees, and reconciling the Company's two bank accounts. Preece was not employed to perform an audit or examination of petitioner's business, books, records or financial affairs. The information provided by petitioner was normally received in the offices of Atlantic Bookkeeping by an employee of Preece's, Cathy Mixon, known as Cathy Griffis ("Griffis"). The information was placed on a shelf until it was transferred to the records. The information was used for doing payroll, figuring sales tax reports, preparing quarterly reports, preparing summaries of income and expenses and was subsequently organized for preparation of a monthly statement. All of *573 this work except preparation of the monthly statement was done primarily by Griffis. When Griffis completed her work, the documents were repackaged and placed on another shelf in the office. Eventually, the information was returned to petitioner. None of the information provided by petitioner to Atlantic Bookkeeping was lost by Atlantic Bookkeeping, and petitioner never complained or otherwise informed anyone of the loss of any of this information. It was agreed and understood between petitioner and Preece that the method by which Preece was to determine petitioner's gross sales was through the unnumbered wholesale sales invoices provided by petitioner and, beginning in 1973, summary sheets of *5 retail sales prepared and provided by petitioner. Petitioner did not provide Preece with cash register tapes from his retail sales. Petitioner was specifically responsible for keeping the fishermen's payroll [3] and preparing summaries of the 1974 retail sales. Petitioner also determined and provided to Preece the gross retail sales figure for 1973, kept independent records on the Company bank accounts which he verified monthly with Preece's office, and was responsible for providing *574 Preece with the data necessary to compute the Company's income and expenses.Petitioner frequently called Preece to request preparation of monthly reports on the income and expenses of the Company. During the years in issue petitioner was responsible for the expansion of the business, purchase of equipment for the business, setting the price at which he bought and sold the crabs and the purchase of other business assets. In the years 1972, 1973, and 1974, petitioner bought U.S. Savings bonds, spending a total of $7,500, $11,250 and $7,500, respectively. The balances of petitioner's personal bank accounts increased a total of $8,132.76, $23,077.87 and *6 $23,326.36, during 1972, 1973, and 1974, [4] respectively. In 1973, petitioner purchased a municipal bond for $2,120.00, purchased stock for $4,403.31, and lent his brother $1,500.00. In 1974, petitioner purchased a car for $6,129.90, and bought stock for $9,323.88. *575 Petitioner knew that the amounts he expended for the purchase of the stocks and bonds and the funds he accumulated in his personal bank accounts came from the profits of his business. Petitioner did not have a personal checking account until 1974. Some of his purchases of stocks and bonds were made with checks drawn on the Company checking account. Petitioner purchased some savings bonds and made some deposits to his personal savings accounts with receipts of the Company which were not run through the Company account. Preece prepared petitioner's returns for the years 1972, 1973, and 1974. The returns are clearly stamped "Information Furnished by Taxpayer." Petitioner, on his returns for the years in issue, reported the following information: *7 1972
1973
1974
Gross Company
$118,297.95
$178,186.68
$304.448.61
Receipts
Net Company Profit
12,745.38
7,762.57
2,987.87
Net Dividend and
587.26
2,396.50
2,922.91
Interest Income
Adjusted Gross
13,322.64
10,159.07
5,910.78
Income
Taxable Income
9,082.64
6,385.21
[5] 5,910.78
Total Tax Liability
1,967.81
1,694.20
586.04
*576 Respondent's audit of petitioner's returns for the years in issue disclosed a variety of errors in the computations done by Preece.Corrected for these errors, petitioner would have reported taxable income of $8,950.78, $9,384.20, and $3,591.01 for the respective years in issue. Because the books, records, and documentation provided by petitioner did not accurately reflect his income for the years 1972 through 1974, respondent reconstructed petitioner's income for those years using the net worth method. Although petitioner appeared to cooperate in the examination of his returns, petitioner was not "completely open" with respondent's agent and refused to allow his safe deposit box to be inventoried. Petitioner conceded that his actual income and tax liabilities, computed by respondent for the years in issue, are as follows: *8 1972
1973
1974
Taxable Income
$47,317.26
$70,890.98
$46,667.57
Total Tax Liability
$11,375.24
$23,697.93
$15,897.87
Petitioner's underpayments of tax resulted from his deliberate failure to provide Preece with complete and accurate sales invoices or other sales records of the Company. Petitioner was indicted for *577 violations of section 7201 for the years 1972, 1973, and 1974, and was found not guilty. OPINION The sole issue for decision is whether the addition to tax for fraud is to be imposed for each of the years 1972 through 1974, inclusive. We find that the evidence provided by respondent shows that petitioner fraudulently evaded tax in the years at issue. Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion, 578 F.2d 1383 (8th Cir. 1978). To establish fraud, respondent must show that the taxpayer filed his return with the specific intent to evade tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 634 (1981). The failure to keep *9 adequate records is indicative of an attempt to defraud. Papineau v. Commissioner,28 T.C. 54 (1957). *578 The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. Merritt v. Commissioner301 F.2d 484, 487 (5th Cir. 1962); Gatling v. Commissioner,286 F.2d 139, 145 (4th Cir. 1961); Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). Since direct evidence of fraudulent intent is seldom available, we may draw reasonable inferences from the conduct of the taxpayer and the surrounding circumstances. Grosshandler v. Commissioner,75 T.C. 1 (1980). [6]
*579 Respondent contends that petitioner understated his income during the years in issue with an intent to evade taxes. Petitioner argues he did not possess the necessary intent required for a finding of fraud. He asserts that this argument is supported by: (1) his lack of education and accounting knowledge; (2) his lack of time for accounting and tax matters; *10 (3) his lack of concealment and cooperation with respondent; and, (4) his good faith reliance upon Preece and the alleged incompetance of Preece. The facts in the instant case are similar to those in Estate of Temple v. Commissioner,67 T.C. 143 (1976). In Temple, the taxpayer had a very limited formal education, which did not prevent him from becoming a successful businessman. The taxpayer maintained control over the information contained in the underlying books and records from which his taxable income was computed. The taxpayer had substantial understatements of income for a three year period. This Court rejected the taxpayer's defenses of ignorance and reliance upon an accountant, and found that the taxpayer's conduct was intimately entwined with the inaccurate reporting of his business *580 income. In the instant case, respondent has shown, by clear and convincing evidence, that petitioner fraudulently evaded taxes in 1972, 1973, and 1974.Petitioner consistantly failed to report substantial amounts of income. Based on the information provided by petitioner, Preece prepared returns for the years in issue. Even when adjusted for errors, these returns underreported petitioner's income by approximately $38,000, $60,000 and $43,000 for the years 1972, 1973, and 1974, respectively. The balances in petitioner's bank accounts during the years in issue increased by more than the amounts he reported as taxable income. In *11 addition, during these years petitioner purchased stocks, bonds, a car and made a loan to his brother. As we stated in Temple,supra at 164: The gap between the income received and that reported on his returns for each year is simply too substantial for [the taxpayer] to have overlooked when he signed the returns. * * * In 1969 [the taxpayer] cashed checks, which were not recorded in the journal, totalling $1,352.61, only slightly less than the $1,493.46 of taxable income he reported for that year. It stretches the bounds *581 of credulity too far, when considered with his affirmative conduct in creating the inaccurate journal, to suggest that [the taxpayer] unwittingly accepted [the bookkeeper's] computations of his taxable income. The records kept by Preece did not properly reflect petitioner's income because petitioner withheld invoices and other pertinent information from Preece. It stretches credulity too far to believe petitioner unwittingly accepted Preece's computation of his taxable income. We did not find petitioner to be a credible witness, and we reject his self-serving testimony.Despite his denials, it is clear petitioner intentionally withheld the invoices and other information from Preece. In the instant case, petitioner argues that his lack of education and accounting knowledge exculpate him from fraudulent intent. Petitioner is not as naive as he would have this Court believe. The record is replete with instances showing petitioner's business acumen and his control over the bookkeeping, accounting methods and tax reporting for the Company, including: establishing the method of accounting and maintaining the records of sales of equipment to fishermen and *12 purchases from *582 them; establishing the retail sales summary sheets; determining which expenditures were for business items and which were for personal items; and maintaining the essential records necessary to determine the gross receipts of the business. Petitioner called Preece to ask for financial statements. To buttress his claim of unsophistication, petitioner alleges he did not understand the statements.We reject this self-serving testimony. Clearly, petitioner was sufficiently sophisticated to understand that by withholding invoices from Preece he would lower his reported taxable income. Further, petitioner chose to use unnumbered invoices. We also reject petitioner's contention that, in effect, he was "too busy" to form an intent to evade taxes or notice how his personal expenses exceeded his reported income. Petitioner was not so overworked that he failed to take time to make investment decisions. In addition, petitioner checked with Preece monthly to discuss the business. The facts in the instant case bear little resemblence to those in Wiseley v. Commissioner,185 F.2d 263 (6th Cir. 1950), relied on by petitioner. In Wiseley, the taxpayer was an overworked doctor *583 who could not obtain competent bookkeeping help due to the exigencies of World War II, and was thus unable to keep up with his records. Here, petitioner was not handicapped by lack of help or the pressures of a war. *13 Petitioner claims that his open ownership of assets and his cooperation with respondent militates against a finding of fraud. Petitioner's comingling of personal and business accounts and the fact that he did not "hide" his assets do not support the proposition that he lacked the necessary fraudulent intent. Further, petitioner was not completely open with respondent's agents and refused to allow an inventory of his safe-deposit box. Petitioner contends that he relied upon Preece to prepare accurate returns, and that Preece was responsible for underreporting his income. While a taxpayer's reliance upon an accountant to prepare proper returns may indicate an absence of fraudulent intent, Cf. Marinzulich v. Commissioner,31 T.C. 487, 490 (1958), petitioner cannot rely on this argument because he failed to supply Preece with all the information necessary to properly prepare the returns. The substantial underreporting of income during the *584 years at issue was not due to Preece's incompetence.Preece was not retained to check with the Company's customers in order to find out if all invoices were being provided to him, or to otherwise doublecheck on petitioner. Petitioner's actions, not Preece's, caused the substantial understatements of income and tax. *14 On the basis of our consideration, we find that respondent has clearly and convincingly demonstrated underpayments for the years in issue and the portions of such underpayments were due to fraud for purposes of section 6653(b). [7] We have considered petitioner's other arguments and find them unpersuasive. Based on the foregoing, Decision will be entered for the respondent
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner conceded the deficiencies for 1972 and 1974. A deficiency in the amount of $22,003.73 for the year 1973 was assessed by agreement prior to the mailing of the notice of deficiency upon which this case is based.↩
3. Petitioner kept tickets showing now much he owed the fishermen for the purchase of crabs and how much they owed him for the purchase of gas, bait or other supplies.↩
4. Of the $23,326.36 net increase in 1974 in petitioner's bank accounts, $9,750 resulted from the sale of a property in which petitioner had inherited a remainder interest.↩
5. In 1974 petitioner used tax table income to compute his tax. This taxable income is computed as follows: ↩
Adjusted Gross Income
$5,910.78 Less Low Income Credit
(1,300.00)
Exemptions
(2,250.00)
Taxable Income
$2,360.78 6. Petitioner and respondent reserved the right to pursue on brief their hearsay objections to certain documents offered and received into evidence at trial. Petitioner did not pursue these arguments on brief, thereby waiving his objections. Respondent argues that portions of petitioner's criminal trial transcript and certain balance sheets prepared by petitioner's present accountant are inadmissible hearsay and irrelevant. Petitioner contends that the portions of the transcript are admissible as impeachment evidence and as prior inconsistent statements of witnesses. We agree. Rules 608(a), 801(d)(1), Federal Rules of Evidence.↩ Petitioner, however, failed to establish any exception to the hearsay rule which would permit admission of the balance sheets.
7. Since we have found petitioner's returns to be false and fraudulent, the statute of limitations does not bar the assessment or collection of the deficiencies. Sec. 6501(c)(1).↩