Marion Johnson and Maybell Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 71546.
United States Tax Court
T.C. Memo 1965-275; 1965 Tax Ct. Memo LEXIS 55; 24 T.C.M. (CCH) 1511; T.C.M. (RIA) 65275; October 14, 1965
*55 Peter B. Wells, F. & M. Bldg., Beaumont, Tex., and Tanner T. Hunt, Jr., for the Petitioners. Harold Friedman, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax under section 293(b) of the Internal Revenue Code of 1939 for fraud, additions to tax under section 294(d)(1)(A) of the Code for failure to file declaration of estimated tax, and additions to tax under section 294(d)(2) of the Code for substantial underestimate of estimated tax for the years and in the amounts as follows: Addition to tax, I.R.C. 1939
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
1948
$4,504.42
$6,079.37
$761.72
1949
4,906.22
3,652.98
816.91
1950
5,660.36
4,567.98
$2,787.27
784.36
1951
8,683.48
4,341.74
1,704.41
425.79
Issues presented for determination are the correctness of the respondent's action: (1) in determining that petitioners had unreported income of $9,600 for each of the taxable years 1948, 1949, and 1950 and of $14,200 for 1951; (2) in determining that the petitioners were *56 liable for additions to tax under section 293(b) for fraud; (3) in determining other additions to tax under section 294; and (4) in failing to determine that the assessment and collection of the deficiencies in income tax and additions to tax for the years in issue were not barred by the expiration of the applicable periods of limitation. In addition to the foregoing issues arising from determinations made by respondent, another issue has been presented arising from an amendment to answer filed by respondent at the trial herein, namely, whether petitioner Marion Johnson is estopped in this proceeding from denying that he made payments to Henry A. Reid, Jr., Sheriff of Calcasieu Parish, Louisiana, by virtue of a previous criminal conviction for perjury involving the charge that he falsely testified in a United States Grand Jury proceeding "that he had never paid or given any money to" Reid. Findings of Fact Some of the facts have been stipulated and are found accordingly. Marion Johnson, also known as "Buster" Johnson and sometimes hereinafter referred to as the petitioner, and Maybell Johnson are husband and wife and reside in Orange, Texas. They filed their joint Federal income *57 tax returns for the years 1948 through 1951 with the district director in New Orleans, Louisiana. The petitioner, who has a high school education, was born in Louisiana in 1916 and thereafter was reared in that State. When 18 years of age, he left home and went to Lake Charles, Louisiana, where he began working. Thereafter for many years he worked in gambling places. For an undisclosed time after 1940, the petitioner worked in Port Arthur, Texas. After leaving Port Arthur, he was employed in several of the night spots in Orange, Texas, and about 1944 acquired a small interest in the Louisiana Night Owl, a club located on U.S. Highway 90 in Calcasieu Parish, Louisiana, about a mile from the Texas-Louisiana border. The name of the Louisiana Night Owl later was changed to the New Sabine Club or the New Sabine Club Bar. In 1946 petitioner was a 50 percent partner in the New Sabine Club with E. J. Smith. On October 18, 1946, the petitioner purchased Smith's one-half interest in the Club. Thereafter petitioner operated the Club as a sole proprietorship. The New Sabine Club was a night club and gambling establishment. Gambling included dice games, slot machines, and horse booking. *58 Because of the serious illness in 1941 of Henry A. Reid, Sr., then Sheriff of Calcasieu Parish, Louisiana, his son, Henry A. Reid, Jr., became acting sheriff of that parish. In 1942 Reid, Jr. was elected sheriff and has continued to serve in that capacity until the present time. One Cody served as chief deputy sheriff of the parish during the tenure of Reid, Sr. as sheriff of the parish and during the tenure of Reid, Jr. as sheriff of the parish. During August 1947, Sam W. Smith became associated with the petitioner as a partner in the New Sabine Club, the name of which at that time was changed to New Sabine Club Bar. At that time Smith operated The Grove, a night club and gambling establishment, in the area of the New Sabine Club Bar. The partnership between the petitioner and Smith in the New Sabine Club Bar terminated at Smith's request at the end of 1947. Following termination of the partnership, the petitioner, thereafter during the years 1948 through 1952, conducted as a sole proprietorship the business theretofore conducted by the partnership, first under the name of Buster's Night Club during 1948 and 1949 and thereafter under the name of Club Buster. In 1952, while engaged *59 in gambling operations at Club Buster, the petitioner was arrested by Sheriff Reid for gambling, was convicted on May 17, 1952, and served 30 days in jail in Calcasieu Parish, Louisiana. The petitioner ceased operating Club Buster about 1953. The petitioner's activities during the years 1948 through 1951 included the operation at his club, which continued to be located on Highway 90, of a bar, restaurant, a dance hall and club or gambling rooms; the operation of dice games at Bevo's in Lake Charles, Louisiana; and the operation of dice games at Club Flamingo on Highway 90. The gambling games at petitioner's club included dice, slot machines, roulette, and cards. The petitioner's income tax returns for the years 1948 through 1951 reflect net income and tax due as follows: Net income
Tax
Year
per return
per return
1948
$14,374.34
$ 2,210.46
1949
33,912.24
8,413.94
1950
$60,778.83
$22,436.70
1951
41,046.34
13,458.02
The following is a statement of the income from the operation of the club rooms at petitioner's club and other gambling income reported on the petitioner's income tax returns for the years 1948 through 1951: Classification of income
1948
1949
1950
1951
Slot machines
$ 7,710.10
$ 18,318.21
$ 18,288.92
$ 3,188.75
Horse booking
9,115.60
Dice games
76,225.30
92,002.07
126,344.97
90,029.38
Dice games - Bevo's
4,870.00
8,424.00
Dice games - Club Flamingo
(5,460.50)
Telephone
270.52
635.75
758.29
337.06
Misc. income - gambling
16,000.00
8,500.00
30.00
Baseball booking
426.20
(238.12)
Football booking
4,011.10
1,500.00
Total
$109,321.52
$110,956.03
$163,199.48
$103,509.19
*60 The income tax return of the petitioners for the taxable year 1947 was the subject of an audit by a revenue agent in 1950 but no additional tax is shown to have resulted from the audit. Petitioner's income tax returns for the taxable years 1948 through 1950 were originally the subject of an audit by an internal revenue agent in the early part of 1952. In the course of that audit the revenue agent prepared a net worth and nondeductible expenditures analysis covering the period from December 31, 1947 through December 31, 1951. Petitioner's net worth as of January 1, 1948, did not exceed $88,879.82, of which $51,166.03 consisted of petitioner's investment in his club and in other business and investment properties. Petitioner's net worth on December 31, 1951, was as follows: ASSETS
Cash on Hand and in Banks: Petty cash
$ 250.00
First National Bank, Orange,
Texas
43.27
Business Investments: Club Buster
159,328.69
Securities: Island Production Com-
pany, Lake Charles,
La.
$1,000.00
United States Govern-
ment bonds
750.00
1,750.00
Real Estate: Home, 2211 Norwood Manor, Or-
ange, Texas
8,200.00
Mortgages Receivable: None
Life Insurance and Annuities: (Cost)
$ 26,541.35
Personal Property: Automobile, 1949 Cadillac
(cost)
$3,290.91
Jewelry: Engagement ring
115.00
One ring
2,500.00
Misc., earrings, etc.
100.00
Fur coat
1,500.00
Other clothes, furni-
ture, etc. 5,000.00
12,505.91
Total assets
$208,619.22
LIABILITIES AND NET WORTH
Mortgages Payable: Sissons Mortgage Company, Hous-
ton, Texas
$ 4,423.50
Loans Payable: None
Net Worth:
204,195.72
Total liabilities and net worth
$208,619.22
*61 Petitioner's net worth increased in the period between December 31, 1947, and December 31, 1951, by $115,315.90. During the years 1948 through 1951 petitioner paid income tax as follows: Year
Amount
1948
$ 3,936.91
1949
3,240.50
1950
6,835.34
1951
32,436.70
Personal living expenses of petitioner for the years 1948, 1949, 1950, and 1951 amounted to $5,016.02, $9,227.33, $5,073.47, and $13,715.53, respectively. The excess of increase in net worth, plus nondeductible expenditures, over income reported during the period December 31, 1947, through December 31, 1951, amounted to at least $34,255.91, without taking into consideration any amounts of nondeductible expenditures representing amounts paid to law enforcement officials. On the basis of the revenue agent's analysis made in 1952 of petitioner's net worth and nondeductible expenditures, without taking into consideration any payments to law enforcement officials, the petitioner had unreported income in the amounts of $22,336.52 in 1948, $5,584.15 in 1949, and $6,335.24 in 1950. In March 1952, the petitioners agreed to and paid the income tax due on the foregoing amounts of unreported income. In *62 making his net worth and nondeductible expenditures analysis the revenue agent specifically questioned the petitioner regarding payments to law enforcement officials and specifically examined records of the petitioner furnished to him during the course of the audit for evidence of such payments reflected by the records. Petitioner specifically denied to the revenue agent during the course of the audit in 1952 that any payments had been made to law enforcement officials and, on March 11, 1952, petitioner executed an affidavit to that effect. The revenue agent was unable to determine from the records furnished him by the petitioner that any payments were made to law enforcement officials and since petitioner denied making any such payments, no amounts representing such payments were included in his net worth and nondeductible expenditures analysis in 1952. However, the revenue agent concluded from his analysis and examination of petitioner's records that any such payments, if made, would be nondeductible expenditures and would represent unreported income, and he so advised the petitioner at the time of the original audit. The revenue agent further found that the books that were *63 furnished to him generally reconciled to the returns which were filed and concluded that no payments to law enforcement officials were made from the income reported. At an undisclosed time between the completion of the jail sentence imposed on him in May 1952 and on or about May 20, 1956, in a pool hall in Lake Charles, Louisiana, the petitioner remarked to John Anthony Niel that Sheriff Reid put him (petitioner) in jail although petitioner had given him (Reid) money during the operation of petitioner's club over a period of years following World War II. At that time Niel had known petitioner for more than 20 years. During the entire 1940's Niel made his living in the gambling business. In 1940 and again in 1956, Niel was arrested and convicted of gambling. On or about May 20, 1956, in the Rhodes Cafe and in the Tap Room, in Orange, Texas, petitioner engaged in a conversation with John Anthony Niel, Anthony Niel, Jesse Parker, and Jimmy Cox. During the course of the coversation petitioner stated that he gave Sheriff Reid $800 a month for a period of 10 years for allowing him to conduct gambling in Calcasieu Parish, that he paid him $500 a month for permitting him to conduct gambling *64 at his (petitioner's) "joint," that he paid $300 a month for E. J. Smith, that he paid Sheriff Reid $300 a month during the time he was operating Bevo's, and that he made a campaign contribution to Sheriff Reid of $4,600. In this conversation, petitioner also stated that he had been questioned about these payments by Government agents, including the one who had made the above-mentioned investigation of his income tax liability for the years 1948 through 1950, and that he had denied to the agents making any payments. The conversation described in the foregoing paragraph was, unknown to petitioner at the time, recorded by John Anthony Niel on a Minifon wire recorder which he had concealed on his person. Prior to making the recording, John Anthony Niel had anticipated that a conversation involving the subject of payoffs to Sheriff Reid would arise. In the event such a conversation did not arise, it was Niel's intention to bring the conversation "around to it." In making the recording Niel was attempting "to get Sheriff Reid" by getting evidence against him to present to him or to officials of the Federal Government. After the time the recording was made, the petitioner indicated to *65 Niel a willingness to testify against Reid and that he "had paid him off." Later petitioner indicated to Niel that he would not so testify. Thereupon Niel in order "to convince" the petitioner that he should testify against Reid, played for petitioner a tape made from the recording. Thereupon the petitioner again indicated to Niel his intention not to testify against Reid. Thereafter Niel approached Reid with a tape of the recording and threatened to use it against Reid for closing gambling establishments. Subsequently the recording was obtained by the Internal Revenue Service in response to a summons following receipt of information from Niel of its existence. On March 11, 1958, petitioner was indicted by the Federal Grand Jury in New Orleans, Louisiana, for perjury under Title 18, U.S.C. 1621. The indictment charged, in pertinent part, as follows: That on or about the 28th day of February, 1958, at New Orleans, Louisiana, in the Eastern District of Louisiana and within the jurisdiction of this court, one MARION JAMES JOHNSON committed perjury before the United States Grand Jury in and for the Eastern District of Louisiana; That is to say, that the said *66 MARION JAMES JOHNSON duly appeared and testified as a witness before the said United States Grand Jury, which was then and there investigating and inquiring into a matter within its jurisdiction: to-wit, certain purported unreported income tax liabilities of an individual who had filed and caused to be filed income tax returns with the Collector of Internal Revenue for the Internal Revenue Collection District of Louisiana at New Orleans, Louisiana: That the investigation and inquiry was a proceeding in which the laws of the United States require an oath to be administered, and the said MARION JAMES JOHNSON, before testifying, had duly taken the oath administered by Allen H. Generes, Deputy Foreman of the Grand Jury, the said Allen H. Generes being then and there a competent officer authorized under the laws of the United States to administer said oath, that the testimony that the said MARION JAMES JOHNSON would give would be the truth, the whole truth and nothing but the truth; That the said MARION JAMES JOHNSON did willfully, knowingly, unlawfully, feloniously, corruptly and contrary to his oath, testify and declare that he had never paid or given any money to Henry J. Reid, Jr. *67 , Sheriff of Calcasieu Parish, Louisiana, whereas, as he then and there well knew, this statement was false in that he had paid and given money to Henry J. Reid, Jr., Sheriff of Calcasieu Parish, Louisiana; That the false statement made by the said MARION JAMES JOHNSON as aforesaid was competent, material and relevant to the matter then before the Grand Jury; and that the said MARION JAMES JOHNSON did not then and there believe the statement to be true, but knew it to be false and untrue at the time he made it. Petitioner after a trial by jury in the United States District Court for the Eastern District of Louisiana, New Orleans Division, was found guilty of the crime charged in the indictment and, on March 8, 1961, received a sentence of 2 years. The verdict of conviction was affirmed by the United States Court of Appeals for the Fifth Circuit on June 29, 1962, the opinion being reported as Marion James Johnson v. United States of America, 304 F. 2d 760 (C.A. 5, 1962). A subsequent petition for rehearing was denied on or about September 13, 1962. Following the denial of the petition for rehearing, petitioner filed an application for stay of execution of the sentence *68 pending the outcome of a hearing on a motion for a new trial based on newly discovered evidence filed in the United States District Court for the Eastern District of Louisiana in New Orleans, Louisiana. On September 12 and 13, 1962, testimony was received by the United States District Court for the Eastern District of Louisiana at New Orleans, Louisiana, on the motion for new trial. The petitioner's motion and a supplemental motion for new trial were denied by the District Court on December 31, 1962. On January 18, 1963, a notice of appeal was filed to the denial by the District Court of petitioner's motion for a new trial. On April 16, 1963, a partial record of the hearing of September 12 and 13, 1962, was filed by petitioner with the Clerk, United States Court of Appeals, Fifth Circuit. To date, the record on appeal has not been completed due to certain difficulties in transcribing a major portion of the testimony, and this matter is still pending in the Court of Appeals pending completion of the record on appeal. In determining the deficiencies involved herein for 1948, 1949, and 1950, the respondent determined that in addition to the amounts of unreported income based on the *69 revenue agent's analysis made in 1952 of petitioner's net worth and nondeductible expenditures, namely, $22,336.52 in 1948, $5,584.15 in 1949, and $6,335.24 in 1950, the petitioner had further unreported income of $9,600 for each of the foregoing years and had unreported income of $14,200 for 1951. In addition to determining the deficiencies in tax involved in this proceeding, the respondent also determined additions to tax for fraud for the respective years. The income tax returns of the petitioners for the years in issue were filed on the following indicated dates: Year
Date filed
1948
March 15, 1949
1949
March 15, 1950
1950
March 14, 1951
1951
March 17, 1952 The notice of deficiency involved herein was mailed to petitioners on October 31, 1957. Opinion In his answer the respondent alleged that in the course of the audit made by the revenue agent of the income tax returns of petitioners for 1948, 1949, and 1950, the petitioner denied making during those years any payoffs to law enforcement officers or other public officials; that subsequently in a further investigation, respondent has determined that petitioner made unlawful payments in the amounts *70 of $9,600 for each of the years 1948 through 1950 and of $14,200 for 1951 to Sheriff Reid to allow petitioner to conduct the petitioner's gambling activities in Louisiana; that, as a result of the foregoing unlawful payments, respondent has increased petitioners' income, as previously determined by respondent, by such payments for the respective taxable years; that, for each of the taxable years 1948 through 1951, the petitioners filed a false income tax return; that, with intent to evade and defeat tax, the petitioners fraudulently understated their net income for each of the taxable years 1948 through 1951 by the abovementioned respective amounts; that the deficiencies in income tax for the years 1948 through 1951 determined in the notice of deficiency here involved are due in whole or in part to fraud with intent on the part of the petitioners to evade tax; that the income tax returns filed by petitioners for the years 1948 through 1951 were filed with intent to defeat and evade tax legally due for each of such years and, therefore, the period for assessment and collection of the deficiencies in tax as set forth in the statutory notice of deficiency are not barred as alleged by *71 petitioners. In their reply, the petitioners denied the foregoing allegations of the respondent. At the hearing herein the respondent filed an amendment to his answer wherein he alleged that the same facts and evidence as were used to establish in petitioner's perjury case payments by petitioner to Sheriff Reid are the basis of the additional expenditures alleged by respondent in the instant case and that by virtue of the doctrine of collateral estoppel, petitioner is bound in this proceeding by the essential findings and facts inherent in his conviction in the perjury case. The foregoing allegations were denied by petitioners in their reply filed after the hearing. The respondent, who has the burden of establishing the foregoing allegations, has not submitted any evidence from which we can ascertain that the same facts and evidence as were used to establish at petitioner's perjury trial payments made by petitioner to Sheriff Reid are the basis of the additional expenditures alleged by respondent in the instant case. According to the indictment, the basic question involved in petitioner's perjury trial was the truth or falsity of petitioner's testimony before the Grand Jury "that *72 he had never paid or given any money to" Sheriff Reid. Proof that prior to or subsequent to the taxable years 1948 through 1951 the petitioner had paid or given money to Reid would be sufficient to sustain petitioner's conviction on the indictment, but such proof, standing alone, obviously would be insufficient to show that petitioner also paid or gave money to Reid during the years 1948 through 1951. In view of the state of the pleadings and of the record otherwise respecting the years 1948 through 1951 we are without a basis for holding that the doctrine of collateral estoppel is applicable here. Section 1112 of the Internal Revenue Code of 1939 places on respondent the burden of proof in fraud cases. [1] The fraud meant by section 293(b) "is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing," Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941). See also Wiseley v. Commissioner, 185 F. 2d 263 (C.A. 6, 1950). Respecting fraud and the burden of proof with respect thereto, it was said in Henry S. Kerbaugh, 29 B.T.A. 1014, 1016 (1934), affd. 74 F. 2d 749 (C.A. 1, *73 1935): A charge of fraud has always been regarded as a serious matter in the law. Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence. George L. Richard, 15 B.T.A. 316; M. Rea Gano, 19 B.T.A. 518; * * * See also Walter M. Ferguson, Jr., 14 T.C. 846 (1950). In support of his allegations as to fraud and in discharge of his burden of proof of fraud on the part of the petitioners, the respondent relies on the recording made by John Anthony Niel of the conversation occurring on or about May 20, 1956, between him, petitioner, and others mentioned in our findings of fact, and a deposition of Sam W. Smith, called as a witness by petitioners, taken several weeks prior to the trial herein. As we understand the position of the respondent, he contends that petitioner's statements as to payments to Sheriff Reid made by petitioner during *74 the recorded conversation constitute admissions against interest by petitioner and therefore are to be accepted as facts which prove such payments by petitioner to Reid. From a consideration of the conversation in the light of the circumstances under which it was recorded and in the light of the remainder of the record bearing thereon, it appears to us that to hold here as respondent contends would require attaching to the statements an undue and unwarranted significance. The facts surrounding the recording of the conversation in issue and the subsequent use made of it by John Anthony Niel show that Niel, who throughout the 1940's had made his living in the gambling business and who apparently was still in the gambling business in 1956 when arrested and convicted for gambling, was disgruntled with and embittered at Sheriff Reid because of Reid's closing of gambling establishments in Calcasieu Parish. Niel, prior to the recording and in a conversation with petitioner had heard petitioner remark that Reid had put him in jail although he (petitioner) had given him (Reid) money during the operation of petitioner's club over a period of years following World War II. Consequently in a *75 spirit of "getting Reid" and out of a willingness to exploit the petitioner therefor, Niel traveled from Lake Charles, Louisiana, to Orange, Texas. There he, his father, and two others engaged petitioner in a conversation which was designed to and, by the questions then asked and remarks made, was calculated to include petitioner to demonstrate impulsively his embittered attitude toward Reid who had caught him in the conduct of gambling operations in his (petitioner's) club, arrested him for gambling, and caused him to serve 30 days in jail therefor. As a means of getting a record of statements of petitioner made without inhibition or the restraint of an oath, and without indication to petitioner thereof, Niel concealed the recording instrument on his person. Thereafter, when petitioner indicated to Niel that he would not testify against Reid in any proceeding involving Reid's income tax liability, Niel played for petitioner a tape of the recording "to convince" petitioner that he should so testify. However, petitioner further indicated to Niel that he would not do so. Thereafter Niel approached Reid with a tape of the recording and threatened to use it against Reid for closing gambling *76 establishments in Calcasieu Parish. Apparently Reid rebuffed Niel's threats and the recording thereupon came into the possession of the Internal Revenue Service following its receipt of information from Niel of the existence of the recording. During the period from August 1947 until the end of that year, Sam W. Smith was associated as partner with the petitioner in the New Sabine Club, the name of which was changed during that time to New Sabine Club Bar. At Smith's request the partnership between him and the petitioner was terminated at the end of 1947. Prior to, during, and subsequent to the period of the partnership, Smith operated The Grove, a night club and gambling establishment located in the general area of the New Sabine Club Bar. From our consideration of Smith's deposition in connection with the remainder of the record, we fail to find that it constitutes clear and convincing evidence of facts essential to a conclusion that it supports the respondent's determination of fraud for the taxable years in issue. In some instances the testimony contained in the deposition is contradictory. In other instances the testimony therein is in conflict with credible evidence elsewhere *77 in the record. Other parts of the testimony are so vague, indefinite, and equivocal as to foreclose a finding that they have application to any of the taxable years here involved. Except for the remark made by petitioner to John Anthony Niel in a pool hall in Lake Charles, Louisiana, that Sheriff Reid put him (petitioner) in jail although he had given Reid money during the operation of the petitioner's club over a period of years following World War II and except for the statements of the petitioner contained in the recording made by Niel on or about May 20, 1956, the record fails to disclose any other instance of the petitioner having stated that he had paid Reid any money at any time for protection from arrest for gambling or conducting gambling operations. The petitioner appeared at the hearing herein and testified as a witness in his behalf. Although in a number of instances in the record he gave testimony at variance with that given in other instances, the record shows that when testifying or making other statements under oath as to whether during the taxable years in issue he gave or paid any money to Reid, he has consistently stated that he did not. The record shows that *78 during 1950 the income tax return of the petitioners for 1947 was the subject of an audit by a revenue agent, but there is no showing that any additional tax resulted from the audit. The record further shows that the income tax returns of the petitioners for 1948 through 1950 were the subject of an audit by a revenue agent in 1952; that for those taxable years the agent computed the income and the income tax liability of the petitioners on the basis of increases in net worth; and that although such computation resulted in additional tax for those years, the agent was unable to discover or locate any evidence or indication that petitioner had during those taxable years made or given any payment to any law enforcement officer or other public official. As a consequence of the foregoing and since petitioner had stated to the agent that he had not made or given any such payments during the taxable years there involved and also executed an affidavit to that effect, the revenue agent did not recommend that any additions to tax be imposed with respect to the additional tax for those years resulting from his audit. From a consideration of the foregoing in connection with the record as a whole, *79 we are unable to find that the petitioner's statements in the recorded conversation as to payments made by him to Sheriff Reid over the years were, or were intended by petitioner to be a reflection of any actual payments made by him to Reid during the years in issue. Consequently it is our opinion that the respondent has not discharged his burden of proving by clear and convincing evidence that petitioner had unreported income of $9,600 for each of the years 1948, 1949, and 1950 and $14,200 for 1951, representing sums paid by him to Sheriff Reid during those years and that accordingly the income tax returns of petitioners for such years were false and fraudulent and were made with intent to evade tax. In view of the foregoing conclusion, we hold that the petitioners were not liable for additions to tax under section 293(b) for fraud. As a consequence, we further hold that the periods of limitation for assessment and collection of tax and additions to tax under section 294(d)(1)(A) and (d)(2) for the years in issue had expired at the time the notice of deficiency involved herein was mailed to the petitioners. Decision will be entered for the petitioners. Footnotes
1. "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner."↩